154 N.J. Super. 264 (1977)
381 A.2d 355
COUNTY OF HUDSON, A BODY POLITIC AND CORPORATE IN LAW OF THE STATE OF NEW JERSEY AND BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, PLAINTIFFS-APPELLANTS,
v.
TERMINAL CONSTRUCTION CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY; ANTHONY J. MASCOLO; GEORGE MASUMIAN; AND TRANSAMERICA INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 1, 1977.
Decided November 18, 1977.
*266 Before Judges LYNCH, BISCHOFF and KOLE.
Mr. Harold J. Ruvoldt, Jr., Hudson County Counsel, attorney for appellants (Mr. Archie Usdin, of counsel and on the brief).
Messrs. Heller & Laiks, attorneys for respondents Terminal Construction Corporation and Transamerica Insurance Company (Mr. Murray A. Laiks, of counsel; Mr. Herbert R. Ezor, on the brief).
Messrs. Feuerstein, Sachs & Maitlin, attorneys for respondents Mascolo and Masumian (Mr. Allan Maitlin, of counsel and on the brief).
*267 The opinion of the court was delivered by BISCHOFF, J.A.D.
Plaintiffs appeal from a summary judgment in favor of all defendants which dismissed the complaint against them on the basis of N.J.S.A. 2A:14-1.1 (limitation of actions against architects and contractors). This contract action arose out of the construction of the Hudson County Administration Building in Jersey City, which was completed and accepted by the board of chosen freeholders on August 1, 1960.
Terminal Construction Corporation (Terminal) contracted with plaintiffs on June 30, 1955 to perform general construction work on the proposed building. In particular, this work included the installation of ceramic enameled tempered plate glass on the walls throughout the interior of the building. Mascolo and Masumian, architects, were allegedly obligated by their contract with plaintiffs to draw plans and specifications for this construction enterprise and also to supervise the work of Terminal and all its subcontractors and employees. Transamerica admits that it merged and consolidated with American Surety Company (American) which had entered into a performance bond with Terminal on June 30, 1955 wherein American agreed to bond Terminal, the principal, in the amount of $2,603,896 upon the condition of the well and true performance by Terminal of the general construction work it had contracted that same day to undertake. As a result of the merger and consolidation, plaintiffs contend that Transamerica is responsible for the bond of American.
The genesis of this suit was the county's discovery in May 1975 that many of the ceramic tiles installed throughout the Administration Building were beginning to bulge, separate from the cinder block walls and fall, causing a hazardous condition. Removal of the tiles from the wall showed that metal ties affixed to the wall which were intended to be used to support the tile blocks were not in actual use but had been bent up. Further, the backs of the tiles had been broken off before being set into place so as to *268 fit the line of the wall which had been built too far into the stairwell. The necessity of rectifying this condition has cost the county monies which it sought to recover in this suit. The complaint was filed on February 23, 1976.
The trial judge concluded that suit against all defendants was barred by N.J.S.A. 2A:14-1.1 because more than ten years had elapsed since the completion and acceptance of the construction and filing of the complaint. On appeal plaintiffs assert: (1) the running of the statute is tolled by the discovery rule in those situations where, as here, the defective condition is latent and fraud-like subterfuge impedes discovery of the defect, and (2) the statute does not apply to a surety such as Transamerica.
The discovery rule began in the limited area of medical malpractice, Fernandi v. Strully, 35 N.J. 434 (1961), but quickly spread to other fields, including the construction industry and related fields after the old "completed and accepted" rule was abandoned. Totten v. Gruzen, 52 N.J. 202 (1968). As a result of these two changes in the law, the liability of those involved in the building trade, such as architects and contractors, expanded immensely. It was as a direct result of this expanded liability that N.J.S.A. 2A:14-1.1 and similar statutes were enacted in more than 30 other states. O'Connor v. Altus, 67 N.J. 106, 121 (1975); Rosenberg v. North Bergen, 61 N.J. 190, 198 (1972). These statutes were meant to cut back on the potential of this group to be subject to liability for life. Comment, "Limitation of Action Statutes for Architects and Builders  Blueprints for Non-Action," 18 Cath. U.L. Rev. 361, 384 (1969). Therefore, it would be directly contrary to the intent of the Legislature to permit the discovery rule to cut back on the impact of this statute when the statute was primarily intended to counteract the effect of the discovery rule.
Since the discovery rule is an instrument of equity, it might seem proper, at first, to allow the rule to be applied in those cases where it is alleged that there was a purposeful *269 concealment of a defect. (The fraud-like deception alleged herein was the bending back of the metal ties and cutting off the back of tiles so that they would take up less space and conceal the fact that the cinder block wall was built too far into the stairwell.) However, virtually all latent defects in construction could probably be subject to the allegation that they were purposefully concealed. Certainly any suit against an architect based on the fact that he incorrectly certified work as being completed in accordance with the specifications and in a workmanlike manner may be framed in terms of an accusation that the certification was made with knowledge of the defect. Such an exception would quickly engulf the statute (N.J.S.A. 2A:14-1.1) and render it worthless. This contention of plaintiffs is rejected.
Plaintiffs' second contention relates to the application of the statute to the surety. N.J.S.A. 2A:14-1.1 reads in pertinent part:
No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.
Plaintiffs argue that, on its face, the statute does not apply to sureties. The trial court concluded that under its equitable powers it had authority to grant to a surety the use of a defense of which the principal might have availed himself, citing Salitan v. Magnus, 62 N.J. Super. 323 (App. Div.), certif. den. 33 N.J. 388 (1960).
Salitan is distinguishable from the present case. In Salitan the inability of the creditor to collect from the principal debtor was based on a bar arising out of the creditor's actions which were deemed unfair to the debtor. If the creditor was being "punished" for acting unfairly, it would have been highly inequitable to allow the creditor to be made whole at the expense of the surety. In the present case it is not the *270 fault of the county that it cannot go against the principal. The county does not appear in a court of equity with unclean hands.
Yet, in spite of the factual dissimilarity between Salitan and the current litigation, the trial judge was correct in applying N.J.S.A. 2A:14-1.1 to the surety. Although this statute does set a time limitation on causes of action, it is not actually a statute of limitation. N.J.S.A. 2A:14-1.1 not only bars the institution of suit after the expiration of ten years for a cause of action arising within the ten-year period, but prevents a cause of action from ever arising after a ten-year period. Any harm resulting after that period of time is deemed to be damnum absque injuria. The function of the statute in the latter situation is to define a substantive right rather than to alter or modify a remedy. Rosenberg v. North Bergen, supra 61 N.J. at 199; Comment, op. cit. at 372. It is a long settled principle that the existence of a subsisting debt of the principal is essential to a suit against the surety. Salitan v. Magnus, supra 62 N.J. Super. at 334. This is true even though the surety's promise is direct, not derivative. Cf. Amelco Window Corp. v. Federal Ins. Co., 127 N.J. Super. 342, 346 (App. Div. 1974). Therefore, since plaintiffs did not have a cause of action against Terminal, they had no cause of action against Transamerica.
Alternatively, plaintiffs argue that N.J.S.A. 2A:14-1.1 is inapplicable to sureties because N.J.S.A. 2A:14-4 provides for a 16-year statute of limitation on causes of action based on specialties such as contracts under seal. The bond herein is in the form of a contract under seal. Freedom Finance Co., Inc. v. Steeples, 140 N.J. Super. 449 (App. Div. 1976); Beneficial Finance Co. v. Dixon, 130 N.J. Super. 508 (Cty. Ct. 1974). And, a surety bond has traditionally been held to be governed by N.J.S.A. 2A:14-4. In re Harris, 101 N.J. Eq. 5 (Ch. 1927).
However, N.J.S.A. 2A:14-4 is not applicable in this case because the later, more specific statute, N.J.S.A. *271 2A:14-1.1, is deemed to be an exception to the former, general one. 1A Sutherland, Statutes and Statutory Construction (4 ed. 1972), § 23.16 at 248-249; cf. State v. Hotel Bar Foods, 18 N.J. 115, 128 (1955). Additionally, application of N.J.S.A. 2A:14-4 to the surety would lead to an inequitable result since N.J.S.A. 2A:14-1.1 would deny it recourse against the principal. For all the above reasons, we hold the trial court was correct in applying N.J.S.A. 2A:14-1.1 so as to bar plaintiffs' action against the surety.
The judgment below is affirmed.