925 A.2d 720 (2007)
394 N.J. Super. 159
TRINITY CHURCH, Plaintiff-Appellant,
v.
Atkin Olshin LAWSON-BELL, formerly Tony Atkin Associates; Bruce E. Brooks & Associates; E. Allen Reeves, Inc.; and Gallo Masonry, L.L.C.,[1] Defendants-Respondents, and
Dibiase Construction, Inc.; Ortega Consulting Structural Engineering; Lower Bucks Cooling and Heating; and F & M Rojak Insulation Co., Defendants, and
Gallo Masonry, L.L.C., Defendant/Third-Party Plaintiff-Respondent,
v.
Maria Isabel G. Beas, Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 2007.
Decided June 27, 2007.
*721 Adrienne C. Rogove, Princeton, argued the cause for appellant (Saul Ewing, attorneys for appellant; Ms. Rogove, of counsel and on the brief; David C. Kistler, on the brief).
John H. King argued the cause for respondent Atkin Olshin Lawson-Bell (Thompson Becker & Bothwell, Cherry Hill, attorneys; Mr. King, on the brief).
Stephen D. Menard, King of Prussia, PA, argued the cause for respondent Bruce E. Brooks & Associates (Powell, Trachtman, Logan, Carrle & Lombardo, attorneys; Mr. Menard, of counsel and on the brief).
James W. Scott, Jr., Philadelphia, PA, argued the cause for respondent E. Allen *722 Reeves, Inc. (White and Williams, attorneys; Mr. Scott, of counsel and on the brief; Warren E. Kampf, of the Pennsylvania bar, admitted pro hac vice, on the brief).
Louis A. Bove, Philadelphia, PA, argued the cause for respondent Gallo Masonry, L.L.C. (Bodell, Bove, Grace & Van Horn, attorneys; Mr. Bove, of counsel and on the brief; Jay M. Green, on the brief).
Keith L. Hovey, Woodbridge, argued the cause for respondent Maria Isabel G. Beas (Wilentz, Goldman & Spitzer, attorneys; Mr. Hovey, of counsel and on the brief).
Before Judges LINTNER, S.L. REISNER and C.L. MINIMAN.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
Plaintiff Trinity Church appeals from four trial court orders dismissing on summary judgment its complaint against an architect and several other defendants based on alleged construction defects. We conclude that plaintiff's complaint was properly dismissed because it was filed beyond the statute of limitations which, by contract, commenced on the date of substantial completion of the construction project. While we agree with plaintiff that the standard contract clauses abrogating the discovery rule are subject to equitable tolling, plaintiff did not establish a factual basis for equitable relief. Therefore, we affirm.

I
In 1994, Trinity Church (Trinity) contracted with defendants Atkin Olshin Lawson-Bell (AOL-B or architect) and E. Allen Reeves, Inc. (general contractor), who in turn subcontracted with defendants Bruce E. Brooks & Associates (HVAC and plumbing) and Gallo Masonry, L.L.C. (mason), and third-party defendant Maria Isabel G. Beas (mason consultant).[2] The contracts were for renovations to Trinity's historic church located in Princeton, New Jersey, and construction of an addition to the structure.
The relevant contracts, which were also incorporated by reference in the subcontracts, contained clauses providing that the statute of limitations for any cause of action arising under the contracts would run from the date of "Substantial Completion." The architect's contract provided:
Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.
The general contractor's contract similarly provided:
As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion[.]
By their terms, the contracts pertaining to the architect and its subcontractors are governed by Pennsylvania law, which provides a four-year statute of limitations for *723 construction contract lawsuits, 42 PA. CONS. STAT. § 5525(a)(8) (2006), while those of the general contractor and its subcontractors are governed by New Jersey law, which has a six-year limitation period. N.J.S.A. 2A:14-1. See Gustine Uniontown Assocs. v. Anthony Crane Rental, Inc., 577 Pa. 14, 842 A.2d 334, 349 (2004).
The parties signed a certificate establishing August 1, 1997, as the date of substantial completion of the project. Trinity first noticed problems with the construction in April 2000, particularly problems with the mortar, and began communicating with AOL-B about those issues. The parties, including Reeves and Beas, held a series of meetings at which they discussed possible causes of the problems and possible solutions. Finally, AOL-B hired a consultant, 1:1:6 Technologies, Inc., which investigated and issued a lengthy report in September 2002 detailing the problems it discovered with the construction. Trinity received a copy of the report, but it neither filed suit at that time nor undertook any investigation of its own.
Two years later, on September 13, 2004, Trinity filed a two-count complaint, alleging that a defective mortar had been used in the construction and that the HVAC and plumbing work had been done in a defective manner, causing a mold problem and water damage in the building. After filing suit, Trinity hired an engineering consulting firm to evaluate the construction; this firm issued a report on August 24, 2005, and a second report on October 13, 2005. In September and October 2005, defendants filed motions for summary judgment seeking dismissal of the complaint on statute of limitations grounds. On October 18, 2005, Trinity filed a motion for leave to amend its complaint to "clarify" the existing counts of the complaint, to add defendants, and to add a count concerning defective lamination of the church doors and a count concerning "defects in the wall structure of the Church" based on Trinity's expert reports.
After filing its initial opposition to summary judgment, Trinity changed attorneys on October 25, 2005, and the return date of the summary judgment motions was extended to January 6, 2006. Trinity filed supplemental opposition papers on November 23, 2005. Although its initial motion brief contended generally that discovery was incomplete, none of Trinity's motion submissions indicated specifically what further discovery it needed. The record is barren of any motions by Trinity to compel discovery from other parties. On the other hand, Trinity was in default of its discovery obligations until its new counsel provided discovery in response to a court order.
In an oral opinion placed on the record on January 6, 2006, Judge Jacobson granted summary judgment. Relying on Harbor Court Associates v. Leo A. Daly Co., 179 F.3d 147 (4th Cir.1999), and College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc., 132 Md.App. 158, 752 A.2d 265 (2000), she concluded that, in the "Substantial Completion" clauses of the contracts, Trinity bargained away its right to invoke the discovery rule as a means of avoiding the bar of the statute of limitations. Addressing Trinity's claims for equitable relief from the bar of the statute, she reasoned that "[t]here's no claim in this complaint for fraud. There's no claim even for misrepresentation." She also noted that no such claims appeared in the proposed amended complaint which was the subject of plaintiff's motion.
Judge Jacobson found no evidence that defendants had tried to mislead Trinity or to convince plaintiff not to file a lawsuit. She reasoned that the 2002 report from 1:1:6 Technologies revealed "significant cracking" and other problems with the *724 construction, and this should have put plaintiff on notice to investigate and/or file a lawsuit at that time. The judge rejected Trinity's estoppel claim: "[H]ow can I estop the defendants when they were the ones providing most of the information to the plaintiff regarding problems at the church within the New Jersey statute of limitations[?]" She found that "the church had information that there were problems with the work . . . well within the statute of limitations and for whatever reason, which is not clear on the record, they did not file the lawsuit until after the statute of limitations had lapsed." She concluded that no further discovery was warranted and that summary judgment should be granted.
[T]o allow further discovery at this point seems to me to be simply a fishing expedition. . . .
. . . [T]here has been discovery . . . [and] opportunities for discovery and nothing in any of the documents that I've seen suggests that the kind of conduct necessary for an estoppel was present here.
. . . .
. . . And to suggest now that the significance of the latent defects alone should be enough to undo the original contract, AIA contract, to [undo] the church's signing off on the date of substantial completion, I think would effectively destroy the consistency that parties on both sides have a right to rely upon in situations of this nature.

II
Our review of a trial court's grant of summary judgment is de novo, using the Brill standard employed by the trial court. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). That is, we consider whether there are any material factual disputes and, if not, whether the facts viewed in the light most favorable to the non-moving party would permit a decision in that party's favor on the underlying issue. Brill, supra, 142 N.J. at 540, 666 A.2d 146.
A party opposing summary judgment on the ground that more discovery is needed must specify what further discovery is required, rather than simply asserting a generic contention that discovery is incomplete. Auster v. Kinoian, 153 N.J.Super. 52, 56, 378 A.2d 1171 (App.Div. 1977). This is particularly significant where the summary judgment motion concerns a statute of limitations defense, since statutes of limitations are designed to accord defendants repose from litigation. See Martinez v. Cooper Hosp.-Univ. Med. Ctr., 163 N.J. 45, 51-52, 747 A.2d 266 (2000).
In this case, defendants seek to enforce contract provisions defining the date on which the statute of limitations commences. The courts of other states have held the clause valid and have held that its purpose is to abrogate the discovery rule. The courts of this State have not addressed the validity or meaning of the clause; however, those issues are not directly before us because plaintiff has not raised them. Rather, all parties have assumed that the clause is valid and that its purpose is to abrogate the discovery rule. See Lopez v. Swyer, 62 N.J. 267, 273-74, 300 A.2d 563 (1973) (discussing the genesis and purpose of the discovery rule). In other words, the clause defines the limitations period as commencing upon the date of issuance of the certification of substantial completion of the structure. Hence, at the latest, any lawsuit must be commenced within six years of that date since that is *725 New Jersey's statute of limitations for lawsuits based on contracts or injury to real property. N.J.S.A. 2A:14-1. Under Pennsylvania law, the limitations period is four years. 42 PA. CONS.STAT. § 5525(a)(8) (2006). Trinity's lawsuit was not filed within the statute of limitations of either state.
Instead of challenging the clause itself, plaintiff argues that the running of the limitations period should be tolled on equitable principles. In order to consider plaintiff's argument, we deem it necessary to review the treatment of this clause by the courts of other states that have addressed it.
Because the architect's contract by its terms is to be construed in accordance with Pennsylvania law, we begin with precedent from that State. In Gustine Uniontown Associates v. Anthony Crane Rental, Inc., 892 A.2d 830, 836-37 (Pa.Super.2006), Pennsylvania's intermediate appellate court held that the "substantial completion" clause in an architect's contract was enforceable and that its unambiguous purpose was to abrogate the discovery rule as applied to causes of action arising under the contract. The court did not rule on the issue of equitable estoppel, because the plaintiff had not raised that issue in the trial court. Id. at 835-36. The court, however, indicated that both doctrines were recognized in Pennsylvania, and cogently explained the distinction between the discovery rule and the theory of equitable estoppel:
The discovery rule is distinct from the issue of whether a party is equitably estopped from invoking the statute of limitations. The discovery rule operates to toll the statute of limitations during the period the plaintiff's injury or its cause was neither known nor reasonably knowable to the plaintiff. The separate doctrine of fraudulent concealment tolls the statute based on an estoppel theory and provides that a defendant may not invoke the statute of limitations if through either intentional or unintentional fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his duty of inquiry into the facts. Thus, the former doctrine involves a plaintiff's lack of knowledge and the latter doctrine pertains to a defendant's conduct after the cause of action arose.
[Id. at 835 n. 2 (citations omitted).]
New Jersey courts have recognized both doctrines and have noted the same distinctions between them. See Villalobos v. Fava, 342 N.J.Super. 38, 45-46, 775 A.2d 700 (App.Div.), certif. denied, 170 N.J. 210, 785 A.2d 438 (2001).
Relying on precedent from other states, all of which supported enforcement of the clause, and principles of freedom of contract, the appellate court in Gustine held that the clause was valid and enforceable:
We are persuaded by this weight of authority [from other states]. Gustine was not an unversed and unrepresented consumer who could not understand this language. It is a sophisticated business entity fully capable of negotiating on even terms the provisions of its contracts with the benefit of legal counsel. The contract at issue was a standard agreement for contracts between an owner and architect developed by the American Institute of Architects. The stated policy of our Supreme Court is to enforce clear contract language.
[Gustine, supra, 892 A.2d at 839-40.]
The Fourth Circuit Court of Appeals reached the same conclusion in Harbor Court Associates v. Leo A. Daly Co., supra, concluding that under Maryland law the substantial completion clause would be found consistent with that State's judicial policy in favor of freedom of contract:

*726 In light of this established judicial commitment to protecting individuals' efforts to structure their own affairs through contract, we cannot conclude that the Maryland Court of Appeals would decline to allow parties to contract around the state's default rule establishing the date on which a relevant statute of limitations begins to run. This is especially true where, as here, the parties to the agreement are sophisticated business actors who sought, by contract, to allocate business risks in advance. That is, rather than rely on the "discovery rule," which prolongs the parties' uncertainty whether or if a cause of action will lie, the parties to this contract sought to limit that period of uncertainty by mutual agreement to a different accrual date.
. . . Appellants have not alleged that this contract was induced by fraud or duress, or that the bargaining power of the parties was anything but equal. Rather, by all appearances, HCA/Murdock are sophisticated business actors that determined, in the unfettered exercise of their business judgment, that the bargain they received from appellee was adequate consideration for the surrender of the discovery rule's potential advantages.
[Harbor Court Assocs., supra, 179 F.3d at 150-51.]
The court also concluded it would reach the same result if the contract were governed by Nebraska law, based on that state's commitment to upholding the parties' freedom to contract and because the clause does not shorten the statute of limitations; rather it simply establishes the accrual date from which the statute begins to run. Id. at 152-53.
The Maryland Court of Special Appeals reached the same result in College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc., supra, 752 A.2d at 271. In rejecting the College's claim that the clause was ambiguous, the court held "that the disputed contract provision is unambiguous and susceptible of only one meaning. It specifies a clear date for accrual of a cause of action." Ibid. The court also concluded that Maryland law permitted parties to contract for reasonable limitations on the time of accrual of a cause of action, and thus they could contract around the discovery rule, provided the contract provision "is not subject to other defenses such as fraud, duress, or misrepresentation." Id. at 273. The Maryland court recognized that the substantial completion clause was standard in the industry and had been upheld by courts in several other states, and found no reason not to enforce it against a party such as the College that had equal bargaining power and presented no proof that it was coerced or defrauded into agreeing to the provision. Id. at 273-75.
In light of the strong public policy in favor of freedom to contract, the recognized ability of parties to agree to a shorter period of limitations, and the construction by other jurisdictions of similar accrual clauses, we conclude that the provision in the parties' contracts that alters the normal rules governing the time for accrual of causes of action is enforceable.
[Id. at 275.]
Several other state courts have reached the same conclusion, based on essentially the same rationale. See Old Mason's Home of Ky., Inc. v. Mitchell, 892 S.W.2d 304, 307-09 (Ky.Ct.App.1995); Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects, 206 A.D.2d 896, 615 N.Y.S.2d 160, 161 (1994), aff'd, 85 N.Y.2d 995, 630 N.Y.S.2d 960, 654 N.E.2d 1208 (1995); Keiting v. Skauge, 198 Wis.2d 887, 543 N.W.2d 565, 567-68 (App.1995).
*727 While we have not addressed this particular clause, our courts have recognized the validity of contract provisions shortening the limitations period for filing an action so long as they are reasonable:

N.J.S.A. 2A:14-1 sets forth the statute of limitations in New Jersey, but does not prohibit parties to a contract from stipulating to a shorter time period. Plaintiff argues that the Consumer Fraud Act, N.J.S.A. 56:8-1 to -91, which applies to some of her claims, also bars the contractual time limitation. However, the statute of limitations that applies to consumer fraud claims is the same six-year general limitation contained in N.J.S.A. 2A:14-1. Neither of these statutes specifically bars parties from contracting to a shorter time period.
Generally, "[c]ontract provisions limiting the time parties may bring suit have been held to be enforceable, if reasonable." Eagle Fire Protection Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 354, 678 A.2d 699 (1996) (citations omitted). Such provisions are accepted by the courts as long as they do not violate public policy. A.J. Tenwood Assoc. v. Orange Senior Citizens Housing Co., 200 N.J.Super. 515, 523-24, 491 A.2d 1280 (App.Div.), certif. denied, 101 N.J. 325, 501 A.2d 976 (1985).
[Mirra v. Holland Am. Line, 331 N.J.Super. 86, 90-91, 751 A.2d 138 (App. Div.2000).]
Based on the foregoing discussion we conclude that the clause at issue is valid under Pennsylvania law, and if the issue were before us we would be inclined to conclude that the clause is valid under New Jersey law. While our conclusion is dicta in the sense that plaintiff is not contesting the validity of the clause, we deem it significant in that we find no basis to treat this clause with any less deference than we would any other provision of a private contract. Normally we will enforce a contract freely negotiated at arms' length and will not make a better contract for the parties than that for which they bargained. See Solondz v. Kornmehl, 317 N.J.Super. 16, 21-22, 721 A.2d 16 (App. Div.1998).
While the clear purpose of the clause is to abrogate the discovery rule, the courts of other states have indicated that enforcement of the clause may be subject to equitable defenses. See Gustine, supra, 892 A.2d at 835 n. 2; Coll. of Notre Dame, supra, 752 A.2d at 275-76; Oriskany Cent. Sch. Dist., supra, 615 N.Y.S.2d at 161. Thus we turn to plaintiff's equitable arguments.
First, we conclude that although the clause abrogates the discovery rule, it is still subject to equitable tolling in certain circumstances. Like the courts of other states that have interpreted the clause, our courts have generally recognized that a defendant may be denied the benefit of a statute of limitations where, by its inequitable conduct, it has caused a plaintiff to withhold filing a complaint until after the statute has run. See Pressler, Current N.J. Court Rules, comment 36.4.1 on R. 4:5-4 (2007) ("The doctrine of equitable tolling is typically applied to relieve a plaintiff who has been induced or tricked by defendant into missing a deadline."); Price v. N.J. Mfrs. Ins. Co., 368 N.J.Super. 356, 363, 846 A.2d 617 (App.Div.2004), aff'd, 182 N.J. 519, 867 A.2d 1181 (2005); Villalobos v. Fava, supra, 342 N.J.Super. at 50, 775 A.2d 700.
The requirements of equitable estoppel are quite exacting. We have defined equitable estoppel as
the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against *728 another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . .
In contract actions, equitable estoppel has been used to prevent a defendant from asserting the statute of limitations when the defendant engages in conduct that is calculated to mislead the plaintiff into believing that it is unnecessary to seek civil redress. Thus, we have recognized that equitable estoppel may be appropriate where "a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation."
[W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 553-54, 562 A.2d 222 (1989) (citations omitted).]
Likewise, estoppel may arise if a defendant wrongfully conceals or withholds information which it has a duty to provide to the plaintiff, thus causing the plaintiff to miss a filing deadline. See Mosior v. Ins. Co. of N. Am., 193 N.J.Super. 190, 196-97, 473 A.2d 86 (App.Div. 1984). However, a plaintiff must act with reasonable diligence once it obtains the information necessary to file its action and cannot invoke equitable tolling if it has the information in sufficient time to comply with the limitations period:
[I]t is the law of this state that if, after the cessation of any basis for continued reliance by a plaintiff on the conduct of a defendant, there remains a reasonable time under the applicable limitations period to commence a cause of action, the action will be barred if not filed within this remaining time. See Ochs v. Federal Ins. Co., 90 N.J. 108, 116-117, 447 A.2d 163 (1982); Evernham v. Selected Risks Ins. Co., 163 N.J.Super. 132, 137, 394 A.2d 373 (App.Div.1978), certif. denied 79 N.J. 479, 401 A.2d 235 (1979). Here, the three-year period of limitations began to run on November 28, 1972. Even making the dubious assumption that plaintiff first obtained knowledge of the existence of the [insurance] policy in January of 1974, he still had 22 months to commence this action within the applicable limitation period, which ended on November 28, 1975. As such, he may not invoke the doctrine of equitable estoppel.
[Id. at 197, 473 A.2d 86 (emphasis added).]
See also, Binder v. Price Waterhouse & Co., 393 N.J.Super. 304, 312-14, 923 A.2d 293 (App.Div.2007). Although Mosior involved insurance coverage, the same reasoning applies to cases involving construction contracts. See Torcon, Inc. v. Alexian Bros. Hosp., 205 N.J.Super. 428, 437, 501 A.2d 182 (Ch.Div.1985), aff'd o.b., 209 N.J.Super. 239, 241, 507 A.2d 289 (App.Div.), certif. denied, 104 N.J. 440, 517 A.2d 431 (1986).
Having reviewed the record, we conclude that the undisputed evidence in this case is insufficient to establish Trinity's equitable estoppel claim or its related claim that it is entitled to invoke the discovery rule despite the clause. First, there is no evidence that defendants lulled Trinity into missing the filing deadline by concealing the seriousness of defects in the construction or by promising to repair all of the defects without the need for litigation. Cf. Amodeo v. Ryan Homes, Inc., 407 Pa.Super. 448, 595 A.2d 1232, 1237 (1991) (adopting the "repair doctrine," which tolls the statute of limitations where a contractor lulls the customer into inaction by undertaking to repair its defective work and promising that its repairs will fix the problem); Senior Hous., Inc. v. Nakawatase, Rutkowski, Wyns & Yi, Inc., 192 Ill.App.3d 766, 139 Ill.Dec. 878, 549 N.E.2d 604, 608-09 (1989) (equitable estoppel *729 found where architect accepted responsibility for directing repair work over a period of years). The meeting minutes between Trinity and its consultants do not indicate that defendants promised to fix the problems, or that they portrayed the problems as minor, or that they even represented that they knew for certain what caused the problems.
The evidence also indicates that long before the limitations period expired, Trinity was on notice of the very types of problems it now claims its experts only discovered years later. At a December 7, 2001 meeting, the architect and the engineering consultant, Rick Ortega, discussed problems with possible use of the wrong kinds of setting pins to anchor the coping stones and the need to remove the coping stones and re-set them "with the proper detail." The memorandum of that meeting was not concealed. Rather, it was given to the consultant, 1:1:6 Technologies, which included it in the list of documents consulted, as an appendix to its 2002 report, which was given to Trinity. The 2002 report also contains multiple references to the need to pin the coping, "[l]ack of mechanical anchorage between the face stone and the back-up CMU," "[i]nsufficient embedment of pins holding [the] coping," and "[f]ailure of anchorage of coping support pins in both coping unit and back-up CMU." These are the types of problems Trinity claims its experts uncovered in the 2005 reports.
Trinity has provided no explanation as to why it did not file suit until 2004, when it had the 1:1:6 Technologies report in 2002, or why it did not hire its own consultant to follow up on the 1:1:6 Technologies report until 2005, after it filed suit. See Torcon, Inc., supra, 205 N.J.Super. at 436-38, 501 A.2d 182.
In opposing summary judgment, Trinity presented a certification from its Associate Rector, explaining that prior to receiving the 1:1:6 Technologies report in September 2002, Trinity had discovered a mold problem in the summer of 2002, and it needed to deal with that "emergent condition." His certification, however, does not indicate when the mold problem was remediated, when "it was established by our experts that the mold was not related to the masonry issues," and why Trinity did not file suit sooner if it did believe that its pervasive mold problem was related to the masonry issues. In fact, count two of Trinity's 2004 complaint alleged that defendants were responsible for the mold problem.
In short, nothing in this record explains why Trinity waited two years to file its lawsuit, when it was on notice in September 2002 that there were significant problems with the construction. Nor is there any explanation on this record as to why Trinity did not conduct its own investigation for three years after it was on notice that there were problems with the structure. We agree with the trial judge that there is no evidence that defendants tricked or lulled plaintiff into letting the statute of limitations expire. We next turn to plaintiff's alternate argument concerning alleged fraud.
At oral argument of the summary judgment motion, Trinity's counsel asserted a new theory of plaintiff's case  that defendants fraudulently certified that the structure was substantially complete. Trinity repeats that argument on appeal. Putting aside the impropriety of Trinity's asserting a new legal contention for the first time at a motion argument, and assuming that intentional fraud might justify denying defendants the benefit of the substantial completion clause, we address plaintiff's argument. We conclude that the argument is based on a mistaken understanding of "substantial completion" and that in *730 any event the record does not support this theory of recovery.
We first address plaintiff's predicate argument that the event defined by the clause as commencing the running of the statute, i.e., the issuance of the certificate of "substantial completion," is equivalent to a certificate that the construction is in substantial compliance with the contract or that there are no major construction defects. Based on that argument, plaintiff contends that the architect fraudulently certified the project as being substantially complete. Plaintiff's argument is based on an incorrect interpretation of "substantial completion" as that term is understood in the construction industry.
Contrary to plaintiff's contention, the term "substantial completion" does not mean "substantial compliance" with the contract or an absence of defects. As our Supreme Court has recognized, substantial completion is a term of art in the construction industry and it has a well-recognized meaning.
"Substantial completion has a definite meaning in the construction industry." Perini Corp. v. Greate Bay Hotel [ & ] Casino, Inc., 129 N.J. 479, 500, 610 A.2d 364 (1992), overruled on other grounds by In re Tretina Printing, Inc. v. Fitzpatrick & Assoc., Inc., 135 N.J. 349, 640 A.2d 788 (1994). The American Institute of Architects (AIA) distributes widely-used forms that define and use the concept of "substantial completion." See Perini, supra, 129 N.J. at 500, 610 A.2d 364 (citing Justin Sweet, Sweet on Construction Industry Contracts: Major AIA Documents § 1.1 (1987)). Substantial completion is defined by the AIA (and the contract in this case, which was modeled on an AIA form) as the date when "construction is sufficiently complete . . . so the owner can occupy or utilize" the building. Substantial completion occurs when the architect certifies such to the owner and a certificate of occupancy is issued attesting to the building's fitness. See id. at 501, 610 A.2d 364. At that point, the building is inhabitable, and only touch-up items and disputed items, the "punch list," remain. The punch list is "a final list of small items requiring completion, or finishing, corrective or remedial work." Viking Builders, Inc. v. Felices, 391 So.2d 302, 303 n. 1 (Fla.Dist.Ct.App.1980).
[Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 117, 675 A.2d 1077 (1996) (emphasis added).]
In Russo, the Court construed the ten-year statute of repose applicable to architects and construction contractors, N.J.S.A. 2A:14-1.1.[3]Russo, supra, 144 N.J. at 116, 675 A.2d 1077. The Court rejected an argument that completion should be measured, and the statute should run, from the date of final completion when all punch list items are completed:
[I]f liability were to be measured from the date the last retainage is released and all disputed and punch list items are completed, a contractor's exposure to suit might be prolonged unreasonably. Disputes over workmanship and compensation for services can continue for years. Under the Appellate Division's *731 analysis, a contractor would remain liable and the commencement of the statute of repose could be delayed indefinitely. Such a result is inconsistent with the statutory purpose to provide repose and allow contractors and architects to walk away from liability at a certain point in time; indeed, it would, all too often, provide "liability for life."
[Id. at 117-18, 675 A.2d 1077.]
Accordingly, the Court agreed with decisions from other states which "have interpreted their statutes to begin running at substantial completion, when the property is fit for occupancy by the public." Id. at 118, 675 A.2d 1077. The point of so defining substantial completion is to set a "bright line" date on which the limitations period begins to run. To that end, the issue is not whether the construction has defects but whether a certificate of occupancy has been issued such that the property can be used for its intended purpose. There is no dispute in this case that not only did Trinity obtain a temporary certificate of occupancy for the addition, but its parishioners used the addition for many years before the lawsuit was filed.
While declining to extend the ten-year statute of repose, the Court in Russo did implicitly recognize that the discovery rule applied to the ordinary six-year statute of limitations applicable to claims based on injury to property. Id. at 115, 675 A.2d 1077. See also Torcon, supra, 205 N.J.Super. at 432, 501 A.2d 182. On the other hand, the discovery rule does not extend the ten-year statute of repose, because that statute was specifically passed to protect architects and other construction professionals from the potential "liability for life" posed by the discovery rule. Russo, supra, 144 N.J. at 116, 675 A.2d 1077. See also Greczyn v. Colgate-Palmolive, 183 N.J. 5, 10, 869 A.2d 866 (2005).
In construing the ten-year statute of repose, we also rejected an argument that the discovery rule could operate to toll the statute based on alleged fraudulent concealment, since its fundamental purpose was "to counteract the effect of the discovery rule." County of Hudson v. Terminal Constr. Corp., 154 N.J.Super. 264, 268, 381 A.2d 355 (App.Div.1977), certif. denied, 75 N.J. 605, 384 A.2d 835 (1978). Our reasoning, however, might be equally applicable to this case, in which the parties have by contract agreed to abrogate the discovery rule:
Since the discovery rule is an instrument of equity, it might seem proper, at first, to allow the rule to be applied in those cases where it is alleged that there was a purposeful concealment of a defect. (The fraud-like deception alleged herein was the bending back of the metal ties and cutting off the back of tiles so that they would take up less space and conceal the fact that the cinder block wall was built too far into the stairwell.) However, virtually all latent defects in construction could probably be subject to the allegation that they were purposefully concealed. Certainly any suit against an architect based on the fact that he incorrectly certified work as being completed in accordance with the specifications and in a workmanlike manner may be framed in terms of an accusation that the certification was made with knowledge of the defect. Such an exception would quickly engulf the statute (N.J.S.A. 2A:14-1.1) and render it worthless. This contention of plaintiffs is rejected.
[Id. at 268-69, 381 A.2d 355.]
On the other hand, in County of Hudson, we addressed a statute which was entitled to our deference since it expressed the will of the Legislature. In this case, we address a contract which is subject to *732 the same equitable principles applicable to the parties to all contracts, including the principle that a party may not benefit from its own fraudulent conduct. See Joe D'Egidio Landscaping, Inc. v. Apicella, 337 N.J.Super. 252, 257, 766 A.2d 1164 (App. Div.2001). With that in mind, we see no impediment in our assuming for purposes of this case that some types of intentional fraud could defeat defendants' right to invoke the protection of the clause.
As previously discussed, "substantial completion" is a term of art which refers to the point at which a temporary certificate of occupancy issues. Russo, supra, 144 N.J. at 117, 675 A.2d 1077. Although Trinity's expert reports refer to the Building Officials and Code Administrators (BOCA) Code and the State Uniform Construction Code and conclude that the improvements do not meet the codes in some respects, there is no assertion or evidence in the reports (including those submitted with Trinity's motion to supplement the record on appeal[4]) that any of the defendants bribed or lied to the building inspectors or otherwise procured the temporary certificate of occupancy by fraudulent means.
Nor is there any evidence that defendants lied to Trinity during construction. In support of its claim, Trinity could have provided to the trial court any memoranda or other written information supplied to Trinity by defendants during construction, but did not do so.[5] Trinity's counsel had the opportunity to inspect the architect's file but did not do so.[6] Nor did Trinity's briefs in opposition to summary judgment specify any additional discovery it needed on this or any other issue. See Auster, supra, 153 N.J.Super. at 56, 378 A.2d 1171. There is no evidence that defendants procured the signature of Trinity's agent on the certificate of substantial completion by fraud.
At most, Trinity's proofs show that there are latent defects in the construction. But the very purpose of the substantial completion clause is to protect the construction professionals against the assertion of claims based on latent defects after the statute of limitations has expired. Absent proof of inequitable conduct, other than the alleged shoddy work itself,[7] defendants are entitled to enforce the time limitation provisions of the contracts. That being the case, the trial court also properly denied Trinity's motion to amend its complaint, since the amendment would likewise have been barred by the statute of limitations. See Interchange State Bank v. Rinaldi, 303 N.J.Super. 239, 256-57, 696 A.2d 744 (App.Div.1997); Hartford Accident *733 & Indem. Co. v. Baker, 208 N.J.Super. 131, 137, 504 A.2d 1250 (Law Div. 1985).[8]
Affirmed.
NOTES
[1] E. Allen Reeves, Inc. was improperly named in the complaint as E. Allen Reeves and E. Allen Reeves General Contractors. Gallo Masonry, L.L.C. was improperly named in the complaint as Gallo Masonry.
[2] Several additional defendants were named in the complaint but were never served, and Trinity voluntarily dismissed its complaint against them.
[3] In New Jersey, construction contracts are subject to a six-year statute of limitations, N.J.S.A. 2A:14-1, which is subject to the discovery rule, and a separate ten-year statute of absolute repose, N.J.S.A. 2A:14-1.1, after which potential causes of action no longer exist. See County of Hudson v. Terminal Constr. Corp., 154 N.J.Super. 264, 270, 381 A.2d 355 (App.Div.1977), certif. denied, 75 N.J. 605, 384 A.2d 835 (1978). The substantial completion clause insulates architects and other construction professionals from the operation of the discovery rule during the four-year gap between the statutes.
[4] We granted Trinity's motion to supplement the record with expert reports rendered after the summary judgment orders in this case, for the limited purpose of allowing us to determine whether, even considering that evidence, Trinity might be able to establish its right to relief from the substantial completion clause.
[5] At oral argument in the trial court, defense counsel indicated that Trinity had its own consultant overseeing the work but the consultant had passed away at some point. However, neither Trinity's moving papers nor its appellate briefs cited this as a factor in its inability to timely pursue its claims against defendants. Of course, if Trinity had its own consultant overseeing the work, it would be more difficult to establish a claim that any of the defendants concealed defects during construction.
[6] In light of our disposition of this case, the architect and other defendants should maintain their files until their counsel determines whether Trinity intends to assert any claims against its former counsel.
[7] In fairness to defendants, we emphasize that neither the trial court nor we have adjudicated the underlying merits of plaintiff's claims.
[8] We note the trial court's exemplary patience in permitting plaintiff's counsel to explore issues at oral argument that were not raised in plaintiff's motion briefs, and we find no abuse of discretion in the court declining counsel's belated request, raised for the first time at argument, for leave to file yet another motion to amend the complaint.