**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1839-18T4

MARIA E. OLAVARRIA,

       Plaintiff-Appellant,

v.

TAKASAGO INTERNATIONAL
CORPORATION (USA) , WILLIAM
BUSHMAN, RICARDO MENDOZA,
and SAMANTHA ECKERS, individually,

       Defendants-Respondents.

_____

       Argued January 8, 2020 – Decided January 27, 2020

       Before Judges Fuentes, Haas and Enright.

       On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8973-17.

       Kevin G. Roe argued the cause for appellant.

       Charles A. Strenk argued the cause for respondents (Kiernan & Strenk, attorneys; Charles A. Strenk and Patrick B. Kiernan, on the brief).

PER CURIAM

Plaintiff appeals from the Law Division's November 16, 2018 order granting defendants' motion for summary judgment, and dismissing plaintiff's complaint that alleged defendants violated the terms of an implied employment contract by terminating her from her position as a customer service manager. We affirm.

The facts, as derived from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, are fully detailed in Judge Rachelle L. Harz's well-reasoned and comprehensive written decision. Therefore, we recite only the most salient facts from that decision and, like Judge Harz, view them in the light most favorable to plaintiff, the non-moving party. Polzo v. Cty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

In 2004, plaintiff began working for defendant Takasago International Corporation (Takasago) as an at-will employee. Over the years, Takasago promoted her several times and, at the time of her termination, she held the title of customer service manager at Takasago's fragrance manufacturing and warehousing facility in Harriman, New York.

In 2016, Takasago hired a new employee to serve as the company's demand planning manager (manager). Plaintiff alleged the manager "proceeded to bully her way around the workforce, [and] interfer[ed] with and disrupt[ed] the daily

operation of departments unconnected to her job or duties[.]" Although the manager was not her supervisor, plaintiff asserted the manager was verbally abusive and when plaintiff complained, the manager responded "by sending [plaintiff] a barrage of impertinent, harassing e-mails and would engage in child-like temper tantrums, while cursing and throwing things around her office."

Plaintiff claimed she reported the manager's behavior to her supervisors, but they did not investigate the manager's conduct. Takasago terminated plaintiff's employment on January 17, 2017.

In December 2017, plaintiff filed a complaint against Takasago and three of its employees, including the manager. After defendants moved for summary judgment in August 2018, plaintiff filed a seven-count, second amended complaint with the permission of the court. Plaintiff alleged: (1) wrongful termination in bad faith pursuant to implied contract (count one); (2) breach of covenant of good faith and fair dealing (count two); (3) negligent hiring and retention of the manager (count three); (4) oral defamation by the manager causing a loss of reputation (count four); (5) intentional infliction of emotional distress (count five); (6) negligent infliction of emotional distress (count six); and (7) harassment on a vicarious liability theory (count seven).

3

As an initial matter, plaintiff argued that summary judgment was inappropriate because the parties had not yet completed discovery. Although plaintiff filed her first complaint in December 2017, she did not serve interrogatories upon defendants until three weeks after they filed their motion for summary judgment in August 2018. Plaintiff never served any deposition notices for any of Takasago's employees.

Judge Harz concluded that plaintiff's failure to seek discovery more promptly was not an impediment to consideration of defendants' motion for summary judgment. As the judge recognized, R. 4:46-1 permits a party to file a motion for summary judgment prior to the close of discovery. When such a motion is filed, claims of incomplete discovery will not defeat summary judgment if further discovery will not patently alter the outcome. Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003). A party opposing a motion for summary judgment on the grounds that discovery is incomplete must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington, 359 N.J. Super. at 496). Indeed, the party "must specify what further discovery is required,

rather than simply asserting a generic contention that discovery is incomplete." Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007).

Plaintiff did not provide any certifications to the trial court stating with particularity the information further discovery might produce. Therefore, Judge Harz proceeded to consider defendants' summary judgment motion.

Although plaintiff was an at-will employee, her primary contention both before the trial court and here on appeal is her assertion in count one that Takasago wrongfully terminated her "in bad faith pursuant to [an] implied contract" created by the forty-one page Employee Handbook (handbook) it gave her at the beginning of her employment.

By way of background, it is well-settled that, absent a contractual arrangement to the contrary, employment is at-will. Bernard v. IMI Sys., Inc., 131 N.J. 91, 106 (1993). An at-will employee may be discharged from employment for any reason, with or without cause, Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 290 (1985), subject to the specific protections afforded by such laws as the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, as well as the interests of public policy. Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980). However, "an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer

even when the employment is for an indefinite term and would otherwise be terminable at will." Woolley, 99 N.J. at 285. Therefore, if an employment manual creates an implied contract, the nature of the employment relationship is changed, and the employer must abide by the terms of the manual. Id. at 292.

In order to ensure that such a contract is not formed, the employment manual must have "a clear and prominent disclaimer[.]" Id. at 285. The key inquiry when determining whether an employee handbook gives rise to a contract is "the reasonable expectations of [the] employee[.]" Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 393 (1994). To be effective, a disclaimer must clearly advise the employee that the provisions therein do not constitute an enforceable contract of employment and must be placed "in a very prominent position[.]" Woolley, 99 N.J. at 309. The requirement of prominence may be satisfied in a variety of ways, so long as it is "separated from or set off in a way to attract attention." Nicosia v. Wakefern Food Corp., 136 N.J. 401, 415 (1994). Where reasonable jurors could not differ in opinion regarding whether a document constitutes an implied contract, summary judgment is appropriate. Troy v. Rutgers, 168 N.J. 354, 366 (2001).

In applying these principles, Judge Harz carefully examined the provisions of the handbook, and noted that it included a disclaimer on its first substantive page. This disclaimer stated:

## INTRODUCTION AND DISCLAIMER OF CONTRACT

The policies outlined in this booklet should be regarded as management guidelines only, which in a developing business will require changes from time to time. This handbook is not all-inclusive, but is intended solely to provide general information to our employees. Takasago retains the right to make decisions involving employment as needed. This handbook supersedes and replaces all prior handbooks.

....

The employee handbook and other plan documents are not contractual in nature and do not guarantee any continuation of benefits.

**Takasago abides by employment-at-will, which permits the corporation or the employees to terminate the employment relationship at any time, for any reason. Neither the policies contained in this employee handbook, nor any other written or verbal communication are intended to create a contract of employment or warranty of benefits. The corporation also has sole discretion to add to, delete, or change any policy contained in this employee handbook except employment-at-will.**

While we hope your employment relationship with Takasago will be mutually rewarding and long-term, THIS HANDBOOK SHOULD NOT BE CONSTRUED AS, AND DOES NOT CONSTITUTE, A CONTRACT OF EMPLOYMENT, EITHER EXPRESS OR IMPLIED, OR FOR ANY SPECIFIC DURATION. YOUR EMPLOYMENT WITH TAKASAGO IS AT WILL AND CAN BE TERMINATED AT ANY TIME, WITH OR

7

A-1839-18T4

WITHOUT CAUSE, BY EITHER YOU OR TAKASAGO.

Judge Harz concluded that this disclaimer was "effective" in preventing the creation of a <u>Wooley</u> implied contract between plaintiff and Takasago. The judge noted that the disclaimer was "in bold print" and "capitaliz[ed]" the most important provisions. It was also prominently placed at the very beginning of the handbook. The disclaimer clearly stated that employees were "at-will" and could be terminated at any time and for any reason. The handbook also stated that the at-will employment policy could not be changed. Thus, Judge Harz found that "no reasonable employee could read this [disclaimer] and come to the conclusion that this handbook creates an employment contract with Takasago." Accordingly, the judge rejected plaintiff's assertion in count one of her complaint that she could not be terminated absent cause.

In so ruling, Judge Harz considered and rejected plaintiff's argument that the "Standards of Conduct" section of the handbook set forth "due process" procedures that Takasago failed to follow during her employment. This section of the handbook states:

**STANDARDS OF CONDUCT**

Each employee has an obligation to observe and follow Takasago's policies and to maintain proper standards of conduct at all times. If an individual's behavior interferes

8

with the orderly and efficient operation of a department, corrective measures, up to and including termination will be taken. Disciplinary action may include a verbal warning, written warning, suspension and discharge. The appropriate disciplinary action imposed will be determined by Takasago, in its sole discretion. Takasago does not guarantee that one form of action will necessarily precede another.

....

We emphasize that discharge decisions will be based on an assessment of all relevant factors.

....

Takasago may consider an employee's job performance, prior violation of our work rules, and other relevant circumstances in determining whether to counsel, warn, suspend or discharge an employee. It is up to Takasago's management, in its sole discretion, to decide whether corrective action, up to and including dismissal, is appropriate.

***Nothing in this policy is designed to modify our employment-at-will policy.***

Judge Harz concluded that this section of the handbook did "not create a <u>Wooley</u> contract for two reasons. First, the disclaimer [quoted above] states the employment at-will policy is the only policy Takasago will never alter." The handbook reiterates this point at the end of the Standards of Conduct section by "stat[ing] in bold and italicized print, '***Nothing in this policy is designed to modify our employment-at-will policy***.'"

Just as importantly, Judge Harz found that unlike in Wooley, where the employee handbook stated that certain procedures "must" be followed before an employee could be terminated, 99 N.J. at 312, "Takasago's handbook leaves the termination decision at the 'sole discretion' of Takasago[,]" and also uses the permissive word "may," rather than the mandatory word "must," in stating that Takasago "may consider" several factors in making the termination decision. Thus, Judge Harz concluded "that Takasago's employee handbook had an effective disclaimer, and consequently, no Wooley contract exists."

Moreover, the disclaimer specifically stated that all of "[t]he policies outlined in this booklet should be regarded as management guidelines only," and that "[n]either the policies contained in this employee handbook, nor any other written or verbal communication are intended to create a contract of employment or warranty of benefits." (emphasis added). Because Takasago was not required to follow the management guidelines set forth in the handbook, its employees could not rely on it as a source for "benefits" or other employment protections that might be available if the employees had an express or implied employment contract with the company.

Judge Harz then turned to plaintiff's remaining contentions and found that they also lacked merit. Because plaintiff did not establish she had an implied

A-1839-18T4

contract with Takasago, the judge stated there could be no breach of the covenant of good faith and fair dealing as plaintiff alleged in count two of her amended complaint. See Wade v. Kessler Inst., 172 N.J. 327, 345 (2002) (holding that there must be an express or implied contract in order to find that the implied covenant of good faith and fair dealing has been breached).

Judge Harz next found that plaintiff failed to demonstrate any of the required elements for her negligent hiring, defamation, intentional infliction of emotional distress,[1] and negligent infliction of emotional distress claims in counts three through six of her amended complaint.

The judge also rejected plaintiff's assertion in count seven that she was "harassed" by the manager because

> New Jersey law does not recognize a hostile work environment cause of action in which the harassment was not due to an employee's association with a protected class. See Vasough v. Kierce, 437 N.J. Super. 218, 225 (App. Div. 2014). In other words, there is no cause of action for general bullying, mistreatment by a nasty boss, or failure of the employee to address incivility in the work place. [Ibid.]

---

[1]  With respect to plaintiff's intentional infliction of emotional distress claim in count five, Judge Harz treated defendants' summary judgment motion as a motion to dismiss this count because this was the only new claim plaintiff raised in her amended complaint.

Plaintiff did not assert she was harassed due to her association with a protected class under the LAD and, therefore, the judge concluded her claim in this count was also meritless. This appeal followed.

On appeal, plaintiff raises the same arguments that Judge Harz rejected in her thorough written opinion granting defendants' motion for summary judgment. She again argues that despite the effective disclaimer set forth at the very beginning of the handbook, Takasago was nevertheless bound to follow the guidelines it set forth in the handbook. Plaintiff also contends that summary judgment was premature because she had not completed discovery.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). "Summary judgment must be granted if 'the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting R. 4:46-2(c)).

Thus, we consider, as the trial judge did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving

party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. (quoting Brill, 142 N.J. at 540). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007) (citing Prudential Prop. & Cas. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). We accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

We have considered plaintiff's contentions in light of the record and these applicable legal principles. We are satisfied that Judge Harz thoroughly and correctly addressed the issues in her written opinion, and properly granted summary judgment to defendants. Plaintiff's appellate arguments are without sufficient merit to warrant further discussion here. R. 2:11-3(e)(1)(E). Therefore, we affirm substantially for the reasons expressed in the judge's comprehensive November 16, 2018 decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION