GUSTINE UNIONTOWN ASSOCIATES, LTD., a Pennsylvania Limited Partnership, By and Through GUSTINE UNIONTOWN, INC., General Partner, Appellants

v.

ANTHONY CRANE RENTAL, INC., Anthony Crane Rental, L.P., Architectural Services Group, Inc., Construction Engineering, Consultants, Inc., Geo-Mechanics, Inc., Jabille Development Corporation, Mascaro Incorporated, McMillen Engineering, Inc., P.C. Yezbak & Son, Inc., Penn Transportation Services, Inc., Ruprecht, Schroeder & Hoffman Architects, S & R Restaurants, Inc., and Wendy's of Greater Pittsburgh, Inc., Appellees

v.

Gustine Uniontown, Inc., the Gustine Company, Inc., BSW Architects and Thor Concrete Construction, Inc., Appellees.

Superior Court of Pennsylvania.

Argued July 31, 2001.
Filed Jan. 24, 2006.

832

Edward B. Gentilcore, Pittsburgh, for appellants.

Beth A. Lloyd, Pittsburgh, for GeoMechanics, appellee.

Robert J. Blumling, Pittsburgh, for Mascaro, appellee.

Dolores Innamorato, Pittsburgh, for Anthony Crane, appellee.

Robert J. Ray, Pittsburgh, for Architectural Services, appellee.

Robert Burnette, Pittsburgh, for Construction Engineering, appellee.

Michael J. McShea, Wexford, for Ruprecht, appellee.

Before: JOYCE, BENDER and BOWES, JJ.

BOWES, J.:

¶ 1 Gustine Uniontown Associates, Ltd., a Pennsylvania Limited Partnership, by and through Gustine Uniontown, Inc., general partner, ("Gustine") questions the propriety of the dismissal of Architectural Services Group, Inc. ("ASG") from this breach of contract and tort action. We affirm.

¶ 2 In 1992, Gustine acquired thirty-five acres in South Union Township, Fayette County, in order to construct Cherrytree Square Mall (the "mall"), a retail shopping center. The mall was built over a non-functioning coal mine. Before construction of the shopping center commenced, Gustine was informed that the subterranean characteristics of the acreage could result in earth movement, which, in turn, could result in structural damage to buildings located on the surface.

¶ 3 On May 17, 1992, Gustine executed a contract[1] with ASG, the architect for the project. Gustine entered separate contracts with various contractors for site preparation, investigation, and construction. The contract between ASG and Gustine provided that ASG would intermittently visit the construction site to generally familiarize itself with the progress and quality of completed work and to determine whether that work, when completed, was in accord with the contract documents. ASG did not, however, assume the duty to make exhaustive or continuous inspections nor the responsibility over construction means, methods, techniques, sequences, or procedures. The contract also stated specifically that ASG was not responsible for any particular contractor's failure to carry out work in accordance with the contract documents and that ASG did not have control over acts or omissions of the contractors.

1. The agreement is an American Institute of Architect Standard Form of agreement between an owner and architect, AIA B141 (1987 Edition).

¶ 4 The contract between Gustine and ASG also contained the following pertinent provision:

Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

Contract, Article 9.3.

¶ 5 On September 8, 1993, ASG issued certificates that all structures in the mall were substantially completed. In April 1995, floor slabs in retail stores in the mall began to buckle, and cracks appeared in walls, sidewalks, and parking lots. Gustine averred that it was informed soon thereafter that these events were attributable to normal settlement routinely occurring in new construction. However, Gustine was aware that some of the April 1995 movement, specifically the heaving of a slab in a floor of one of the retail stores, probably was caused by subterranean earth movement. This admission is contained in paragraph 138 of its complaint. By early 1998, every building, sidewalk, and parking area in the mall had experienced damage from subsurface earth movement. In 1999, Gustine also discovered that certain contract specifications had not been met during the construction of one of the retail stores.

¶ 6 On July 30, 1999, Gustine instituted this action by writ of summons. Six months later, it filed a 357–paragraph complaint containing thirty counts against thirteen defendants involved in either pre-construction subsurface investigation, mall construction or both. The allegations in-cluded causes of action sounding in breach of contract and tort. Gustine sought damages for lost profits and for the cost of structural repairs to the mall. Some of the defendants, including ASG, filed preliminary objections based on application of the statute of limitations, arguing that the breach of contract claims were governed by a four-year statute of limitations and that the tort claims were governed by a two-year statute of limitations. Gustine countered that actions for latent defects involving contracts governing real estate construction were subject to a six-year statute of limitations. It also raised allegations against all of the defendants seeking dismissal on statute-of-limitations grounds that any applicable statute had been tolled by the discovery rule. As to some of those defendants, Gustine claimed that the repair doctrine also tolled the statute.

¶ 7 On July 18, 2000, the trial court entered an order rejecting the application of a six-year statute of limitations to the contract counts, but it specifically overruled all but one of the defendants' requests to dismiss. That one defendant was ASG. In this July 18, 2000 order, the trial court observed that dismissal of all those defendants, except ASG, was unwarranted because the court could not determine, without further evidence, whether the discovery rule or repair doctrine operated to toll the applicable limitation periods. Thus, the trial court specifically reserved ruling on the merits of the statute-of-limitations defense as it realized that the two tolling doctrines might render the actions timely as to those defendants.

¶ 8 On that same date, the court entered a separate order regarding ASG. Based on the language in Article 9.3 of ASG's contract with Gustine, ASG was dismissed outright as a party defendant. The trial court concluded that Article 9.3 fixed the

accrual date for both tort and contract claims by Gustine against ASG at September 8, 1993. Since this action was instituted after September 8, 1997, the court ruled that the statute of limitations for claims against ASG had expired. In so ruling, the court implicitly found that neither tolling doctrine applied to ASG.

¶ 9 Gustine asked that the trial court certify its two July 18, 2000 orders for immediate appeal pursuant to Pa.R.A.P. 341(c). The court vacated its July 18, 2000 dismissals pending its consideration of the certification request. On September 14, 2000, the court reinstated its July 18, 2000 orders and also amended the orders to include a determination that an immediate appeal of both orders would facilitate resolution of the entire case, as required by Rule 341(c).

¶ 10 This Court accepted certification as to both orders and affirmed in part, reversed in part, and remanded. *Gustine Uniontown Associates, Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*, 786 A.2d 246 (Pa.Super.2001). We affirmed to the extent that the trial court applied a two-year limitations period to all counts involving fraud and negligence but reversed on the contract claims and held that a six-year statute-of-limitations period applied to contract actions alleging latent real estate construction defects. This ruling rendered the action timely as to ASG since it was commenced within six years of the September 8, 1993 certifications. We therefore did not address the trial court's conclusion that Gustine could not invoke the discovery or repair doctrines against ASG due to Article 9.3.

¶ 11 Our Supreme Court reversed as to the statute of limitations applicable to the contract counts, *see Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc.*, 577 Pa. 14, 842 A.2d 334 (2004), and

held that a four-year statute applied to all actions sounding in breach of contract, even those involving latent defects in the construction of real property. The Supreme Court remanded to this panel to determine Gustine's remaining, properly-preserved appellate claims.

¶ 12 On remand, a two-judge panel of this Court affirmed the dismissal of ASG from the action, but the judges expressed divergent views as to why affirmance was appropriate. Upon Gustine's application, panel reconsideration was granted, and a third judge was assigned to this panel.

¶ 13 In its brief on panel reconsideration, Gustine questions only the propriety of dismissal of ASG at the preliminary-objection stage. Specifically, Gustine challenges the trial court's application and interpretation of Article 9.3 of its contract with ASG. Gustine argues that Article 9.3 is not enforceable since: 1) it is unreasonable to apply this provision to latent construction defects so as to prevent the application of the discovery rule; 2) ASG should be equitably estopped from invoking Article 9.3; 3) the trial court incorrectly determined that the discovery rule applicable to toll statutes of limitations could not be used as to ASG due to the language of Article 9.3; 4) Article 9.3 does not apply to tort-based causes of action; and 5) a six-year statute must be applied in this action because a six-year statute of limitations was in place when the contract was executed, and Gustine reasonably believed that such a statute would apply to the contract.

 ¶ 14 Initially, we address ASG's position that Gustine's arguments against application of Article 9.3 are waived because they were not raised in the trial court. *See* Pa.R.A.P. 302(a). ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

We have reviewed Gustine's response to ASG's preliminary objections as well as the record in general to ascertain any defenses that Gustine raised as to all defendants seeking dismissal on the statute-of-limitations basis.

¶ 15 In response to ASG's preliminary objections, Gustine specifically assailed ASG's statute-of-limitations defense by arguing that a six-year statute of limitations applied under the statutory provisions and interpretative case law. In addition, it also unquestionably sought application of the discovery rule as a tolling device as to **all defendants** that had requested dismissal based on the statute of limitations. This fact is evident from the trial court opinion in support of application of a four-year statute of limitation. Specifically, therein, the trial court observed, "These statute of limitations defenses are being considered at the [preliminary objection] stage of the proceedings at the suggestion of the parties because the availability of the discovery rule will be a significant factual issue in this litigation if I do not accept plaintiff's position that its claims are governed by a six-year limitation period." Trial Court Opinion, 7/18/00, at 2. In footnote two at the end of this quote, the trial court further noted, "As to certain defendants, plaintiff also contends that the statute of limitations was tolled by the repair doctrine[.]" *Id.* at 2 n. 2. These statements clearly establish that the discovery rule was raised by Gustine as to all defendants seeking a statute-of-limitations defense and that the repair doctrine was being raised as to certain, but not all, of

those defendants. Furthermore, in its opinion, the trial court specifically rejected Gustine's position that the language in Article 9.3 did not apply to tort-based causes of actions. Thus, that issue also was presented to the trial court.

■ ¶ 16 The appellate rules direct that an issue must be raised in the trial court in order to provide that court with the opportunity to consider the issue, rule upon it correctly, and obviate the need for appeal. *See Commonwealth v. Smith,* 414 Pa.Super. 208, 606 A.2d 939 (1992). In this case, the trial court was aware that Gustine was seeking application of the discovery rule to toll the statute of limitations as to **all defendants** asserting a statute-of-limitations defense. ASG was one of the defendants raising a statute-of-limitations defense. Gustine also argued to the trial court that the language of Article 9.3 did not impact tort-based claims. These two questions were presented to the trial court in the first instance. Under these circumstances, we will not find that Gustine waived three issues presented on appeal. Two of those issues pertain to application of the discovery rule against ASG and the other one is that Article 9.3 does not apply to tort-based claims.

■ ¶ 17 However, two of Gustine's present arguments apparently were not raised before the trial court. Gustine's response to the preliminary objections filed by ASG contained no averment that Gustine sought to invoke equitable estoppel against ASG.[2] That response also failed

---

**2.** The discovery rule is distinct from the issue of whether a party is equitably estopped from invoking the statute of limitations. *Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850 (2005). The discovery rule operates to toll the statute of limitations during the period the plaintiff's injury or its cause was neither known nor reasonably knowable to the plaintiff. *Id.* The separate doctrine of fraudulent concealment tolls the statute based on an estoppel theory and provides that a defendant may not invoke the statute of limitations if through either intentional or unintentional fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his duty of inquiry into the facts. *Id.* Thus, the former doctrine involves a plaintiff's lack of knowledge and the latter doctrine pertains to a

to indicate that Gustine reasonably expected application of a six-year statute of limitations because that statute was in place when the contract was entered. Gustine's response to ASG's preliminary objections presented the sole claim that a six-year statute of limitations applied under the statutory provisions and interpretative case law. Furthermore, the trial court failed to indicate any awareness of these two positions. In light of the record, we cannot conclude that these two arguments were properly preserved.

■ ¶ 18 Therefore, we will consider the merits of Gustine's claims that the discovery rule applies despite the language of Article 9.3, that it is unreasonable to prevent application of the discovery rule, and that this contractual provision does not pertain to tort-based claims. We first address Gustine's position that "[t]here is nothing on the face of the Article 9.3 that would preclude Gustine from developing the facts necessary to show that [the] accrual date set forth in the Gustine/ASG Contract should be modified based on the well-established discovery rule." Appellant's brief on panel reconsideration at 22. We disagree.

¶ 19 Article 9.3 provides in relevant part that "causes of action" between ASG and Gustine relating to both acts and failures to act "shall be deemed" to have "accrued" **and** "applicable statutes of limitations shall commence to run" no later than the date of substantial completion, which, as noted, occurred on September 8, 1993. The causes of action herein sound in tort and breach of contract and are subject to a two-year statute of limitations and a four-year statute of limitations, respectively. This action was commenced after September 8, 1997, and is untimely under the clear language of Article 9.3. This language precludes application of the discovery rule; indeed, that is its obvious intent.

¶ 20 Gustine also alleges that it would be manifestly unreasonable to preclude application of the discovery rule under Article 9.3 to an action involving latent construction defects. It relies upon 42 Pa.C.S. § 5501(a) (emphasis added), which states:

An action, proceeding or appeal must be commenced within the time specified in or pursuant to this chapter unless, in the case of a civil action or proceeding, a different time is provided by this title or another statute **or a shorter time which is not manifestly unreasonable is prescribed by written agreement.**

*See also Q. Vandenberg & Sons, N.V. v. Siter,* 204 Pa.Super. 392, 204 A.2d 494 (1964).

¶ 21 The flaw in Gustine's position is that Article 9.3 did not shorten the four-year statutory limitations period; it merely dictates when the statute of limitations is triggered. The limitations period of four years remained intact; it simply started to run when the certificates were issued. The initiation of the statutory period and its length are different concepts. Since the provision did not limit the time within which a cause of action, once accrued, had to be instituted, the legal authority relied upon by Gustine is inapposite.

¶ 22 Furthermore, we do not find this interpretation manifestly unreasonable. The clear contractual language provides for accrual of all causes of actions and the commencement of the statute of limitations period as of issuance of the certificates. In light of this language, Gustine simply cannot complain that it "reasonably" believed it had four years from the date of discovery of latent defects to institute an action.

defendant's conduct after the cause of action arose.

¶ 23 It is a basic tenet of contract law that where contract language has a meaning that is generally prevailing, it is interpreted in accordance with that meaning. *See generally* Restatement (2d) of Contracts §§ 202(3)(a), 203(a).[3] The intent of the parties to a written contract is ascertained from that writing, the contractual terms are ascribed their ordinary meaning, and where the language is unambiguous, intent is gleaned from the language. *Kripp v. Kripp,* 578 Pa. 82, 849 A.2d 1159 (2004). Thus, a party may not claim its reasonable expectations are inconsistent with clear contract language. *E.g., Cresswell v. Pennsylvania National Mutual Casualty Insurance Co.,* 820 A.2d 172 (Pa.Super.2003); *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Indeed, when we interpret contracts, the intent of the parties is held to be reasonably manifested by the language itself. *Abbott v. Schnader, Harrison, Segal & Lewis, LLP,* 805 A.2d 547 (Pa.Super.2002). In this case, Gustine could not have reasonably expected that it could apply the discovery rule because those expectations are erased by the clear terms of the contract it executed.

¶ 24 Finally, Gustine maintains that the language does not apply to its tort-based claims. We disagree. The language applies to causes of action and bears no resemblance to the language in *Hazleton Area School District v. Bosak,* 671 A.2d 277 (Pa.Commw.1996), upon which

Gustine relies. In *Hazelton,* the Commonwealth Court affirmed an order denying a motion to compel arbitration in a case sounding in negligence. The Court interpreted two arbitration clauses. One of the clauses provided as follows: "Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration." *Id.* at 279. The other clause stated, "Any dispute concerning the subject matter of this AGREEMENT ... between the parties hereto, ... shall be settled in accordance with the American Arbitration Association's Rules and Regulations." *Id.* The court in *Hazelton* concluded that these clauses did not cover negligence claims because if the parties had intended for the clauses to encompass tort claims, they would have specifically included language to that effect.

¶ 25 In the present case, the language is not restricted to contractual claims or claims arising from the agreement but encompasses all causes of actions generally. Furthermore, in *Smay v. E.R. Stuebner, Inc.,* 864 A.2d 1266 (Pa.Super.2004), we specifically declined to follow the *Hazelton* holding and ruled that similar language in an arbitration provision did apply to tort-based claims.

¶ 26 While the enforceability of this type of contractual provision has not been addressed in Pennsylvania, other jurisdictions have reached the same conclusion as we have today. *Harbor Court Associates*

---

3. Restatement (2d) of Contracts § 202, Rules in Aid of Interpretation, states

 . . . .

 (3) Unless a different intention is manifested,

 (a) where language has a generally prevailing meaning, it is interpreted in accordance with that meaning[.]

Restatement (2d) of Contracts § 203, Standards of Preference in Interpretation, states

In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable:

 (a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]

*v. Leo A. Daly Co.*, 179 F.3d 147 (4th Cir.1999), is instructive. In that case, the developers appealed the grant of summary judgment to an architect. The developers and the architect executed an agreement whereby the architect designed a commercial construction project. The contract was a standard agreement prepared by the American Institute of Architects and contained a claims-accrual provision which stated that any applicable statute of limitations commenced and all causes of actions were deemed to have accrued no later than the date of substantial completion.

¶ 27 The commercial project at issue in *Harbor* subsequently sustained significant damage as a result of a latent defect in design and construction. The architect successfully moved for dismissal in the action instituted by the developers based on the latent defect because the action was initiated outside of the applicable statute of limitations if the date of substantial completion was used as the commencement date for the statute.

¶ 28 Either Maryland or Nebraska law applied in that diversity action, and the *Harbor* Court first analyzed Maryland law. The developers argued that the discovery rule applied under Maryland law and that Maryland courts would refuse to enforce the claim accrual provision based upon public policy. The Fourth Circuit disagreed, concluding that the contractual provision was enforceable in Maryland. While Maryland did apply the discovery rule to all causes of action, it had a countervailing public policy of enforcing voluntary bargains. The Court stated:

> In light of this established judicial commitment to protecting individuals' efforts to structure their own affairs through contract, we cannot conclude that the Maryland Court of Appeals would decline to allow parties to contract around the state's default rule es-

tablishing the date on which a relevant statute of limitations begins to run. This is especially true where, as here, the parties to the agreement are sophisticated business actors who sought, by contract, to allocate business risks in advance. That is, rather than rely on the "discovery rule," which prolongs the parties' uncertainty whether or if a cause of action will lie, the parties to this contract sought to limit that period of uncertainty by mutual agreement to a different accrual date.

*Id.* at 150–51.

¶ 29 The *Harbor* Court also considered Nebraska precedent, wherein the courts have refused to enforce on public policy grounds any contractual provision attempting to alter the statute of limitations period set forth by statute. The *Harbor* Court concluded, as we have, *supra*, that the language did not alter the applicable statute of limitations period but merely the accrual date triggering the prescribed statutory period. The court opined, "The contractual provision at issue in this case governs not the time in which an action, once accrued, may be brought, but rather establishes the moment at which such action accrues. These are distinct concepts[.]" *Id.* at 152. The Court thus held that the provision also was enforceable under Nebraska law.

¶ 30 Finally, the *Harbor* Court "was confirmed in [its] conclusion by the fact that the only courts to consider a contractual accrual date provision have all enforced it. *See Old Mason's Home of Kentucky, Inc. v. Mitchell*, 892 S.W.2d 304 (Ky.Ct.App. 1995); [*Arbitration Between*] *Oriskany Central Sch. Dist. v. [and] Edmund J. Booth Architects*, 206 A.D.2d 896, 615 N.Y.S.2d 160 (N.Y.App.Div.1994), *aff'd*, 85 N.Y.2d 995, 630 N.Y.S.2d 960, 654 N.E.2d 1208 (1995); *Keiting v. Skauge*, 198 Wis.2d

887, 543 N.W.2d 565 (Wis.App.1995)." *Id.* at 151.

¶ 31 In *Old Mason's Home,* the owner of a building instituted an action against an architect for negligent design and supervision to recover for damages sustained when the building was damaged by water. The Kentucky Court of Appeals enforced a contractual provision substantively identical to the one at bar. Absent the provision, the discovery rule would have applied and the action would have been timely. In *Schultz v. Cooper,* 134 S.W.3d 618 (Ky. App.2003), the Court rejected a public policy challenge to its holding in *Old Mason's Home.*

¶ 32 *Oriskany* involved a school district's suit against an architect for breach of contract and malpractice in connection with a new roof installed on a building. The New York court enforced a claims accrual provision nearly identical to the one in question, holding that the provision was enforceable unless procured by fraud, duress, or misrepresentations. The *Keiting* action was between a building inspector and a home owner, and the contract between the two contained a provision that specified a time for accrual of any cause of action. The homeowner claimed that the inspector had failed to reveal a defect in the home. The court upheld the parties' agreement, which rendered the action against the inspector untimely.

¶ 33 Subsequent to the *Harbor* Court's decision, the Maryland Appellate Court confirmed *Harbor's* interpretation of Maryland law. *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.,* 132 Md.App. 158, 752 A.2d 265 (2000). In that case, the owner of a building contracted with an architect to perform design services. The contract between them contained Article 9.3. Six years after the date of substantial completion, there was significant structural movement inside the build-

ing. An engineering firm concluded that the design team for the building's renovation, including the architect, had failed to properly calculate the increase in loads associated with the change in occupancy of the building and that as a result of the load increase, the support system was overburdened. A three-year statute of limitations was applicable, and the architect was dismissed from the ensuing legal action based upon application of Article 9.3.

¶ 34 The Maryland Court of Appeals affirmed, rejecting the owner's position that Article 9.3 was ambiguous because it did not clearly state that it abrogated the owner's ability to invoke the discovery rule. The court ruled that "the disputed contract provision is unambiguous and susceptible of only one meaning. It specifies a clear date for accrual of a cause of action." *Id.* at 271. The Maryland Appellate Court concluded that under the language of Article 9.3, the discovery rule did not apply to toll the statute of limitations. Finally, the court decided that public policy did not prohibit the parties from contracting to prevent application of the discovery rule, upholding the principle that parties should be free to contract and that those contracts should be given effect.

¶ 35 In electing to uphold the provision, the *College of Notre Dame* Court also observed that the standard form contract drafted by the AIA enjoyed a significant history and widespread use in the construction industry, that the contracts were drafted by a staff of highly trained professionals, and that the clause at issue, Article 9.3, was part of the 1987 AIA B141 standard form agreement.

¶ 36 We are persuaded by this weight of authority. Gustine was not an unversed and unrepresented consumer who could not understand this language. It is a sophisticated business entity fully capable of

negotiating on even terms the provisions of its contracts with the benefit of legal counsel. The contract at issue was a standard agreement for contracts between an owner and architect developed by the American Institute of Architects. The stated policy of our Supreme Court is to enforce clear contract language.

¶ 37 Order affirmed.