J-A06012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CARMEN ENTERPRISES, INC., F/D/B/A CRUISE HOLIDAYS OF NORRISTOWN & BYEBYENOW.COM TRAVEL STORE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MURPENTER, LLC, D/B/A UNIGLOBE WINGS TRAVEL | |
| | Nos. 950 EDA 2014 |

Appeals from the Judgment Entered March 26, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No: 02-07223

| | |
|---|---|
| CARMEN ENTERPRISES, INC., F/D/B/A CRUISE HOLIDAYS OF NORRISTOWN & BYEBYENOW.COM TRAVEL STORE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MURPENTER, LLC, D/B/A UNIGLOBE WINGS TRAVEL | |
| Appellee | Nos. 1115 EDA 2014 |

Appeals from the Judgment Entered March 26, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No: 02-07223

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 12, 2015**

Carmen Enterprises, Inc. ("Carmen") and Murpenter, LLC, ("Murpenter") cross-appeal from the judgment entered in the Montgomery County Court of Common Pleas.[1] We affirm in part and reverse in part.

The relevant facts and tortured procedural history of this 13-year-old case, as gleaned from the certified record[2] and the trial court's Rule 1925(a) opinion, are as follows. Bruce Chasan, Esq., is the sole shareholder of Carmen, a Pennsylvania corporation that owned and operated Cruise Holidays of Norristown. Murpenter is a Pennsylvania limited liability corporation that owns and operates Uniglobe Wings Travel. Murpenter is owned by Doug Carpenter and Kate Murphy.

On October 31, 2001, Carmen sold the assets of Cruise Holidays to Murpenter, including what was purported to be a list of 1900 customer names and addresses. The Purchase and Sales Agreement ("Agreement")

---

[1] The parties purport to appeal from the order entered March 13, 2014. **See** Notices of Appeal, 3/26/14 and 4/9/14. "Orders [pertaining to] post-trial motions, however, are not appealable. Rather, it is the subsequent judgment that is the appealable order when a trial has occurred." **Harvey v. Rouse Chamberlin Ltd.**, 901 A.2d 523, 525 n.1 (Pa. Super. 2006) (citations omitted). Judgment was not entered until March 26, 2014, thus the parties' notices of appeal were mislabeled. Despite their errors, this Court will address the appeals because judgment has been entered on the verdict. **See Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division**, 781 A.2d 1263, 1266 n. 3 (Pa. Super.2001), *aff'd,* 571 Pa. 60, 811 A.2d 565 (2002). We have corrected the caption accordingly.

[2] The trial court docket in this case contains 654 entries. The certified record sent to this Court is comprised only of docket numbers 425-655, documents filed after October 1, 2006.

included a fixed and formulaic schedule of remittances to be paid by Murpenter, with the last payment due on November 10, 2002. Paragraph 13 of the Agreement provided: "Any payment that is more than five calendar days late is subject to an automatic 10 percent late fee. Buyer agrees to pay the cost of any collection suit, including reasonable attorney's fees." Agreement at ¶13. Murpenter also agreed to pay certain commissions to Carmen over the twelve months following the date of the agreement, which were to be offset by the scheduled payments noted above. Murpenter assumed the lease for a Compaq computer, which contained part of the customer list that was accessible through "My Advanced Mail List" software installed on the computer. The other portion of the customer list was accessible through "*Cruise*web" database. Together, the lists contained over 1900 names and addresses. Prior to the sale, Mr. Chasan showed Carpenter and Murphy how to access the list on the Compaq computer. Although the hiring of employees was not a condition of the Agreement, Murpenter hired several of Carmen's former employees, including lead sales person Jane Couchara. Ms. Couchara was familiar with the Compaq computer and with Carmen's electronic client list files.

Mr. Chasan relinquished the keys to the Carmen store to Murpenter on November 1, 2001. On November 28, 2001, Ms. Murphy emailed Mr. Chasan asking for a readable computer disk containing the active client list described in the Agreement. Mr. Chasan responded that the disk had been left on Ms. Couchara's desk, and was readable in the Compaq computer. He

told Ms. Murphy that if there was a problem reading the disk, he would lend Murpenter the software to load into one of their own computers.   On November 30, 2001, Ms. Murphy responded that the disk was unreadable and asked for the software.   Mr. Chasan sent the software disk and instruction pamphlet to Murpenter on December 3, 2001, and emailed Ms. Murphy and Mr. Carpenter to tell them it was on its way via certified mail.

Murpenter remitted the agreed-upon scheduled payments through March 2002. However, it paid the December 2001 and March 2002 payments late, thus generating late fees pursuant to Paragraph 13 of the Agreement. Murpenter never paid the late fees.   It stopped its payments in April 2002 because Carmen allegedly had not provided a list of 1900 *active* customers, as promised in the Agreement.

On April 17, 2002, Mr. Chasan filed a complaint on behalf of Carmen against Murpenter, alleging breach of express and implied contract, trespass/property damage, conversion, and interference with contractual obligations. Carmen sought specific performance, indemnification, replevin, and damages, including attorneys' fees.   Among other things, Carmen sought to recover the late fees owed on the December 2001 and March 2002 payments;   the April 1, 2002 payment of $7,500; plus fees, costs, commission payments, and attorneys' fees.   Murpenter filed an answer, new matter, and new matter counterclaims alleging, among other things, fraud based on Carmen's supplying a list that contained less than the 1900 active customer names and addresses promised in the Agreement.   In response,

Carmen filed motions for partial summary judgment with regard to Murpenter's fraud counterclaim and for sanctions.

On January 7, 2003, Murpenter filed a motion for partial summary judgment arguing that Carmen should be precluded from obtaining counsel fees for services provided by Mr. Chasan because he was essentially a *pro se* litigant not entitled to counsel fees. On June 17, 2003, the Honorable Steven T. O'Neill entered several orders that, among other things, denied Carmen's motion for partial summary judgment on the fraud counterclaim, and granted, without explanation, Murpenter's motion for partial summary judgment on Carmen's claim for counsel fees. The court, thus, precluded Mr. Chasan from receiving any contractual attorney's fees for his representation of Carmen in the instant litigation. The June 17 order did not preclude the payment of attorneys' fees to outside counsel.[3] Judge O'Neill denied Carmen's motion for reconsideration.

Extensive discovery and motions proceedings ensued. Carmen served its first set of requests for admissions in response to Murpenter's fraud counterclaim. Murpenter did not respond, and the requests were deemed admitted pursuant to Rule 4014 of the Pennsylvania Rules of Civil Procedure. Carmen then renewed its motion for partial summary judgment on the fraud

---

[3] In addition to representation by Mr. Chasan, Stephen A. Sheinen, Esquire, Garry Mezzy, Esquire, Alan B. Kane, Esquire, and Gilbert J. Scutti, Esquire, each provided legal services to Carmen in connection with this litigation.

counterclaim based on those admissions. Judge O'Neill granted the motion and dismissed the fraud counterclaim on February 2, 2004.

In April 2012, Murpenter filed a Chapter 7 bankruptcy petition, which stayed proceedings in the trial court. Carmen filed a motion in Bankruptcy Court to vacate the automatic stay, which was granted. Carmen then filed a sanctions motion in Bankruptcy Court, alleging Murpenter's Chapter 7 filing had been in bad faith, and Carmen was entitled to counsel fees. The bankruptcy judge agreed and awarded fees to Carmen, including counsel fees for Chasan.

In April 2013, a bench trial in the instant case ensued before the Honorable Richard P. Haaz. On July 9, 2013, the court found in favor of Carmen on all counts in its complaint, and awarded damages of $45,057.47. Carmen filed a post-trial motion to mold the verdict to include prejudgment interest, delay damages, costs and expenses, contractual attorneys' fees, and post-judgment interest. Murpenter filed a post-trial motion asking the court to vacate its decision or order a new trial.

Carmen thereafter filed two motions for sanctions against Ely Goldin, Esq., counsel for Murpenter, and his law firm, Fox Rothschild, LLP, alleging dilatory, obdurate, and vexatious conduct during the course of the litigation. After oral argument, the court granted Carmen's motion to mold the verdict, and denied Carmen's motions for sanctions and Murpenter's post-trial motion. An evidentiary hearing followed, after which the court entered a final order of judgment in favor of Carmen for $160,833.34, plus post-

judgment interest. The order included attorneys' fees for Carmen's four outside counsel, but did not include fees for legal services performed by Mr. Chasan because of Judge O'Neill's June 17, 2003 Order and the coordinate jurisdiction rule. *See* Order, dated 3/13/14, at n.1 ("While Mr. Chasan makes persuasive arguments that Judge O'Neill's decision was erroneous, it is 'the law of the case.'"). Both parties appealed.

Carmen's first issue pertains to Judge O'Neill's June 17, 2003 Order granting partial summary judgment to Murpenter on the issue of Carmen's request for payment of counsel fees for legal services provided by Mr. Chasan. For the reasons stated below, we reverse the 2003 order, and remand for a determination of a reasonable fee for Mr. Chasan's legal services.

We will reverse an order granting summary judgment only for a manifest abuse of discretion or an error of law. *See Sellers v. Township of Abington*, 106 A.3d 679, 684 (Pa. 2014). Summary judgment is appropriate where the record shows that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See id*. Whether there are issues of material fact presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *See id*. We review the record evidence in the light most favorable to the non-moving party. *See Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).

Carmen first avers that Judge Haaz erred in molding the verdict by refusing to grant attorney's fee payable to Mr. Chasan because of Judge O'Neill's prior order on the same issue. Carmen argues that it "believes" Judge O'Neill's order was erroneous, "and therefore Judge Haaz erred in not reversing it." Appellant's Brief at 30. We disagree.

Our courts have long recognized that "judges of coordinate jurisdiction sitting in the same case should not overrule one another's decisions." **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995) (citation omitted). Departure from the law of the case doctrine "is allowed only under exceptional circumstances, such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." **Id**. at 1332 (citations omitted).

Here, although Carmen asserts that it "believes" Judge O'Neill's order was erroneous, Carmen does not aver that the error created a "manifest injustice." Moreover, it does not assert any other circumstance that would allow a departure from the law of the case doctrine. Thus, we cannot conclude that Judge Haaz erred in applying the law of the case doctrine.

With respect to Judge O'Neill's order granting partial summary judgment to Murpenter, we agree with Carmen that the basis for the

payment of attorney's fees is contractual. The tenets of basic contract law provide that

> where contract language has a meaning that is generally prevailing, it is interpreted in accordance with that meaning. ***See generally*** Restatement (2d) of Contracts §§ 202(3)(a), 203(a). The intent of the parties to a written contract is ascertained from that writing, the contractual terms are ascribed their ordinary meaning, and where the language is unambiguous, intent is gleaned from the language. Thus, a party may not claim its reasonable expectations are inconsistent with clear contract language. Indeed, when we interpret contracts, the intent of the parties is held to be reasonably manifested by the language itself.

***Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc.***, 892 A.2d 830, 837 (Pa. Super. 2006) (footnote and citations omitted).

Paragraph 13 of the parties' Agreement clearly and unambiguously provides that "Buyer [Murpenter] agrees to pay the costs of any collection suit, including reasonable attorney's fees." Agreement, ¶13. The Agreement does not contain any provision excluding Mr. Chasan from representing Carmen.

Murpenter avers that because Mr. Chasan is the sole shareholder of Carmen, there is no true attorney-client relationship between Carmen and Mr. Chasan. It also avers that Mr. Chasan acted essentially as a *pro se* litigant and, therefore, is not entitled to attorney's fees.[4] In support,

_____

[4] Murpenter avers that Mr. Chasan's conduct evinced an emotional connection that "guid[ed] Carmen's litigation strategy, which was continuously punctuated by the filing of unnecessary and duplicative
*(Footnote Continued Next Page)*

Murpenter cites cases in which attorneys, representing themselves or their children, had attempted to collect attorney's fees pursuant to statutory fee shifting statutes. *See Kay v. Ehrler*, 499 U.S. 432 (1991); *Woodside v. School District of Phila. Bd. Of Educ.*, 248 F.3d 129 (3d Cir. 2001). These cases are inapplicable.

A corporation is a separate, fictional legal person distinct from its shareholders or employees. *See Viso v. Werner,* 369 A.2d 1185, 1188 (Pa. 1977) ("Nor are we persuaded that because the corporation in the instant case was operated by the appellant as sole shareholder, its independent identity should be ignored."). "The fact that one person owns all of the stock does not make him and the corporation one and the same person." *Barium Steel Corp. v. Wiley*, 108 A.2d 336, 341 (Pa. 1954) (citations omitted).

We decline to disregard the principle set forth in *Barium Steel* and *In re Viso*, that a corporation is a separate and distinct entity from its shareholder*.* Here, unlike in the cases cited by Murpenter, the payment of attorney's fees was governed not by a fee-shifting statute, but by a contract between two corporate entities. Based on the existence of the parties'

*(Footnote Continued)* ————————————

motions," that "unreasonably drove up the value of his legal services." Appellee's Brief at 39. Whether Mr. Chasan's filing of numerous motions was necessary or duplicative is a factor to be considered by the trial court in determining a "reasonable" contractual attorney fee for Mr. Chasan's services.

contract, we conclude that the trial court erred as a matter of law in granting Murpenter's motion for partial summary judgment on this issue. Carmen is entitled to "reasonable attorney's fees," including those incurred for services provided by Mr. Chasan. Accordingly, we remand to the trial court for a determination of what a "reasonable" fee is for the services provided by Mr. Chasan in his capacity as a legal professional. We expect that the trial court will need to conduct a hearing on this matter.

In its second issue, Carmen avers that the trial court erred in denying its post-verdict sanctions motions, filed in accordance with Rule 1023.2[5] of the Pennsylvania Rules of Civil Procedure and section 2503 of the Judicial Code,[6] that were based on Murpenter's false pleading and its vexatious litigation conduct. Carmen asserts that because the trial court dismissed Murpenter's fraud counterclaim after granting Carmen's renewed motion for partial summary judgment on that counterclaim, Murpenter's claim never had any factual support and its filing was therefore "arbitrary" and

---

[5] Rule 1023.2 sets forth the procedure to be followed in filing a motion under Rule 1023.1. Rule 1023.1 provides for an award of attorney's fees and expenses to a party where an opposing party has commenced and pursued an action without legal or evidentiary support or for an improper purpose.

[6] Section 2503 provides, in pertinent part, that a trial court may award a reasonable counsel fee to a party if the opposing party has participated in dilatory, obdurate, or vexatious conduct during the pendency of a matter. **See** 42 Pa.C.S.A. § 2503(7).

"vexatious." Appellant's Brief at 36.[7] Murpenter responds that Carmen engaged in a pattern of practice involving serial motions in order to harass Murpenter and its counsel.

We review the denial of a motion for sanctions for an abuse of discretion. **See Dean v. Dean**, 98 A.3d 637, 644 (Pa. Super. 2014). The trial court has significant discretion in determining whether to impose sanctions. **See** Pa.R.C.P. 1023.1, Explanatory Comment.

An award of attorney's fees is appropriate where utilized as a sanction only where it is shown that a party's conduct during the pendency of the matter was "dilatory, obdurate or vexatious," or in bad faith. **See** 42 Pa.C.S.A. § 2503(7); **Thunberg v. Strause**, 682 A.2d 295, 299-300 (Pa. 1996).[8] **See also Twp. Of South Strabane v. Piecknick**, 686 A.2d 1297, 1301 (Pa. 1996) (denying sanctions in contempt case and stating, "[w]e do not believe the intent of the rule permitting the recovery of counsel fees is to

_____

[7] According to the trial court docket, Carmen first moved for sanctions in connection with Murpenter's claim of fraud on September 6, 2002. Over the now 13 years of this litigation, Carmen has filed 19 motions and supplemental motions for sanctions against Murpenter and its attorneys for various discovery violations and other offenses. The trial court granted two of Carmen's motions for discovery sanctions against Murpenter's attorney.

[8] "Arbitrary conduct is that which is based on random or convenient selection or choice rather than based upon reason or nature. Litigation is vexatious when suit is filed without sufficient grounds in either law or fact and if the suit served the sole purpose of causing annoyance. A lawsuit is commenced in bad faith when it is filed for purposes of fraud, dishonesty or corruption."). **Thunberg**, 682 A.2d at 299-300.

penalize all those who do not prevail in an action."). A grant of summary judgment does not necessarily mean that the pleading at issue meets the definition of vexatious or arbitrary conduct. *See Santilo v. Robinson*, 557 A.2d 416, 417 (Pa. Super. 1989).

In addressing the trial court's observation that it had failed to produce sufficient evidence to support its post-trial sanctions motion, Carmen emphasizes that its motion included "detailed factual averments to support a finding of 'vexatious,' 'obdurate,' and/or 'arbitrary' conduct." Appellant's Brief at 34. Carmen also asserts that "the existence here of numerous conclusive admissions obtained under Rule 4014 permits assessment and reversal of the holding of 'insufficient evidence.'" *Id*. at 35. Averments are, of course, not evidence, they are merely *averments*, and Rule 4014 admissions do not support an allegation of vexatious, obdurate or arbitrary conduct.

The trial court in the instant case noted that it "'has great latitude and discretion with respect to an award of attorney's fees pursuant to a statute.'" Trial Court Opinion at 17 (quoting *Scalia v. Erie Ins. Exchange*, 878 A.2d 114, 116 (Pa. Super. 2005)). The court then stated that it had carefully reviewed Carmen's numerous allegations of bad faith and concluded that there was insufficient evidence that Attorney Goldin had acted in a way that rose to an appropriate prohibited level. The trial court noted that at the time of the filing of the counterclaim, Murpenter and its counsel had believed that

fraud had occurred due to an incomplete customer list. The court observed the following.

> Murpenter received 1,233 unique customer names from the *Cruise*web database. Chasan testified that together the files "Concise2" and "Sales-01" which were on the hard drive of the Compaq computer and on the disk made by Chasan on November 28, 2001, contained over 1900 names. As explained *supra*, these files were only accessible using "My Advanced Mail List Software." The Cruiseweb database list was mistaken for the actual List contained on the "Concise2" and "Sales-01" files. The Cruiseweb list was only a subset of the List delivered to Murpenter on a disk, and naturally contained few names. The evidence demonstrated that Murpenter mistakenly thought the Cruiseweb database [was to have] contained the 1900+ names, when the names were actually stored on the Compaq computer and later saved to a disk created by Chasan.

*Id*. at 20-21.

Our review of the portion of the certified record provided to this Court supports the trial court's finding that there is insufficient evidence to support the grant of Carmen's post-verdict motions for sanctions. The trial court conducted hearings on each of Carmen's motions for sanctions that it filed over the years and based its determinations upon its credibility assessments. Where "the evidentiary record supports the trial court's credibility determination; we are bound to accept them." *Samuel–Bassett v. Kia Motors of America, Inc.,* 34 A.3d 1, 32 (Pa. 2011) (citation omitted). We

- 14 -

conclude that the trial court properly exercised its discretion in denying Carmen's post-trial sanctions motion.[9]

Turning now to Murpenter's cross-appeal, all four issues are based on Carmen's alleged failure to provide 1900 names and addresses of active customers as required by the parties' Agreement. Murpenter avers that Carmen's failure to deliver a readable disk containing the list agreed upon by the parties in a timely manner represented a material breach of the Agreement that, accordingly, suspended Murpenter's obligations. Alternatively, it argues that Carmen only partially performed its obligations when it delivered a list of only 1,244 active customers, and the court should have awarded only a portion of Carmen's damages. Murpenter also summarily avers that Carmen did not transfer the client list to Murpenter in a commercially reasonable manner and Carmen thus materially breached the contract. Finally, it avers that Carmen violated the implied duty of good faith by failing to advise Murpenter that "it considered Couchara a "liar" and "thief" until nearly one month after closing." and that Carmen breached its duties as a "joint ventur[er]." Appellee's Brief at 66-68.[10]

---

[9] We note that this is Carmen's second motion for sanctions based on this same issue that was denied by the trial court after a hearing and argument. Its first motion was in 2003.

[10] Murpenter also avers that the Agreement between the parties made them joint venturers, as evidenced by the schedule of payments. In support, Murpenter reiterates the same argument it asserted for its material breach
*(Footnote Continued Next Page)*

- 15 -

Our scope and standard of review of a verdict rendered after a non-jury trial are as follows.

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Lynn v. Pleasant Valley Country Club*, 54 A.3d 915, 919 (Pa. Super. 2012) (citations omitted).

> In its Rule 1925(a) opinion, the trial court observed the following.

> The list of 1900+ unique, active customers (the "List") was saved in two files on [Carmen's] Compaq computer. Chasan demonstrated to Carpenter and Murphy how to access these lists on the Compaq computer at a meeting on September 3, 2001. Murpenter was in possession of the former Carmen store, which included the Compaq computer, for the month of [November] 2001. This evidence demonstrated Murpenter had constructive possession of the List beginning November 1, 2001. Chasan assumed Murpenter accessed the List on the Compaq computer when he saw labels and mailings when he visited the former Carmen store in November.

_(Footnote Continued)_ ――――――――――

claims. It points to no evidence or pleading that indicates that Carmen and Murpenter understood their arrangement to be a joint venture, rather than a sale and purchase. Accordingly, this claim is without merit.

Murpenter did not notify Carmen that it was missing the List until November 28, 2001, by an email from Murphy to Chasan. Chasan immediately responded by email that he copied the List onto a disk and left it at the former Carmen store, now occupied by Murpenter. Chasan offered to lend Murpenter his "My Advanced Mail List" software if there was any problem reading the disk in the same email. After Murphy complained the disk was not readable without the software by email dated November 30, 201, Chasan sent the "My Advanced Mail List" software by priority certified mail to Murpenter on December 3, 2001. This evidence demonstrates that Carmen made a good faith effort to deliver the List to Murpenter. The court found that Carmen material performed its contractual duties and any technological issue did not rise to the level of non-performance or breach of contract by Carmen. Further the [Agreement] never specified the List was to be delivered on a Disk. Chasan reasonably assumed that Murpenter was in possession of the List as it was saved in the Compaq computer which was in Murpenter's possession and Chasan had already demonstrated how to access this list. Chasan also responded expediently when notified about the issues with the List. Accordingly, the court properly found Carmen performed its duties pursuant to the contract regarding delivery of the List.

* * *

Murpenter received 1,233 unique customer names from the *Cruise*web database. Chasan testified that together the files "Concise2" and "Sales-01" which were on the hard drive of the Compaq computer and on the disk made by Chasan on November 28, 2001, contained over 1900 names. As explained *supra*, these files were only accessible using "My Advanced Mail List Software." The *Cruise*web database list was mistaken for the actual List contained on the "Concise2" and "Sales-01" files. The *Cruise*web list was only a subset of the List delivered to Murpenter on a disk, and naturally contained few names. The evidence demonstrated that Murpenter mistakenly thought the *Cruise*web database contained the 1900+ names, when the names were actually stored on the Compaq computer and later saved to a disk created by Chasan. As discussed, *supra*, it was this List, along with the necessary "My Advanced Mail List" software, that was delivered to Murpenter by Chasan. Carmen performed its contractual duties. This argument is without merit.

- 17 -

\* \* \*

…Carmen did not breach the [Agreement] by failing to deliver the List. Carmen was not even aware until nearly a month after the [Agreement] was signed that Murpenter did not receive the list. When notified of this problem, Carmen acted with reasonable promptness.

\* \* \*

As discussed *supra*, the evidence supported the court's finding that Carmen performed its contractual duties and Murpenter breached its contractual duties. The evidence in the record failed to support that Chasan's personal opinion of Couchara was material or relevant to the formation or performance of the contract between the parties. The retention of the Carmen employees by Murpenter after the execution of the [Agreement] was not a prerequisite for the execution of the [Agreement]. Paragraph 4 stated that Murpenter would offer employment to the former Carmen employees, but the [Agreement] was "in no way contingent on whether Seller's [Carmen's] employees or outside sales agent accept Buyer's [Murpenter's] offer of employment or on how long any of the employees elect to remain employed or affiliated with the buyer." [citing Agreement]. Although Carpenter testified that Couchara was the one they counted on for direction, her employment was not guaranteed nor a condition of the [Agreement].

Trial Court Opinion at 19-23 (citations to notes of testimony omitted).

After due consideration of the evidence, which the trial court found credible, we conclude that the trial court reasonably reached its verdict. The findings of the court are supported by competent evidence and are free of legal error. The court did not err in entering judgment in favor of Carmen.

Judgment affirmed in part and reversed in part. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judge Ott joins the memorandum.

Judge Jenkins files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2015