J-A02035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
PERCY LEDBETTER :
:
Appellant : No. 321 WDA 2022

Appeal from the Judgment of Sentence Entered November 4, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0005816-2020

BEFORE:  BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED:  February 17, 2023**

Percy Ledbetter (Appellant) appeals *nunc pro tunc* from the judgment

of sentence imposed after the trial court convicted him of simple assault and

recklessly endangering another person (REAP).[1]  We affirm.

The trial court recounted the facts presented at trial as follows:

> Leslie Jackson had been dating [Appellant] for a decade
> when the incident at issue unfolded.  [Appellant] was helping Ms.
> Jackson move into a new apartment that day, and the pair was
> using [Appellant's] SUV to move boxes from Ms. Jackson's old
> apartment to her new one.  Later that evening, while the pair was
> at her old apartment, an argument ensued when Ms. Jackson
> confronted [Appellant] about his suspected infidelity.  After Ms.
> Jackson asked [Appellant] whether he was sleeping with an HIV
> positive woman, [Appellant] retreated to her bathroom.  Ms.
> Jackson believed that [Appellant] used K-2[, a controlled
> substance,] while he was in the bathroom because Ms. Jackson

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2701(a)(1) and 2705.

"knows the symptoms" and "knows how [Appellant] acts" when he uses K-2 because she has "been around him for 11 years." [Appellant] came out of the bathroom "screaming", and his "whole reaction, his personality, everything changed." [Appellant] then said, "let's go", "I'm taking you home." He started running around and rushing Ms. Jackson out of the old apartment and into his truck.

The argument continued as the couple went outside and entered [Appellant's] truck. [Appellant] started driving towards Ms. Jackson's new apartment in Wilmerding when Ms. Jackson realized that she did not have her keys with her because [Appellant] had rushed her out of the old apartment. Ms. Jackson told [Appellant] that she did not have her keys. [Appellant] responded that she did not leave anything behind in her old apartment. He then tried to make Ms. Jackson get out of his truck on a dark road. They eventually returned to her old apartment so that she could look for her keys. When Ms. Jackson exited the vehicle, she asked [Appellant] if she could look inside of his truck to see if her bag had fallen on the floor inside, possibly spilling its contents, including her keys, but [Appellant] refused her request and just "took off."

Ms. Jackson stood outside of her old apartment building for the next 20-30 minutes because she did not have her keys to get back inside. Ms. Jackson's purse and identification were still in [Appellant's] truck since he had abruptly driven away. After nearly half of an hour, [Appellant] called her and told her, "come and get your [ ] shit." [Appellant] had returned to the apartment building and was parked at the end of the complex.

To retrieve her belongings, Ms. Jackson reached her arms through the passenger window of the vehicle, which was halfway down, in order to open the door. Ms. Jackson told [Appellant] to open the door so that she could get her belongings, but [Appellant] started driving away, "started trying to take off", while Ms. Jackson had both of her arms in the window. At this point, Ms. Jackson was afraid and screaming. She was "begging him to stop" the truck, but [Appellant] kept driving and started beating her arms with his free hand. She was "holding on for dear life while [Appellant was] beating the hell out of" her forearms with a closed fist.

- 2 -

[Appellant] drove with Ms. Jackson's arms trapped in his truck window for approximately 50 yards, and he did not stop driving until a neighbor came outside and intervened. After the neighbor jumped "up on the window", [Appellant] threw Ms. Jackson's purse out of the truck and "rolled the window down," which caused Ms. Jackson to roll off of the truck, causing her to hit her head on the ground. The neighbor was screaming at [Appellant] and telling him to remain on the scene. [Appellant] pulled over, got out of his truck, and walked over to where Ms. Jackson was laying on the ground after she had just been dragged for approximately the length of the entire apartment building. Instead of offering any assistance, [Appellant] stood over Ms. Jackson and lit a cigarette.

Police responded to the domestic violence call at approximately 2:30 a.m. on the morning of August 11, 2020. Upon arrival, the responding officer observed Ms. Jackson "laying down in the middle of the street," and saw that she was "missing one sandal" and looked "very disheveled." She was emotional and upset. The officer observed a "swollen lump" on the top of her head when she removed her wig. She explained what had happened and explained to the officer that she was injured when "she fell and rolled and hit her head on the ground."

[Appellant] remained on the scene and told the officer that he and Ms. Jackson had gotten into an argument, that he was trying to "get away" from Ms. Jackson after she tried to "get something out of the vehicle" through the window, and that he "drove at a really slow speed, approximately one mile per hour." He stated that his intent was to "get her off the window" and that Ms. Jackson ultimately "just let go." While essentially admitting to dragging Ms. Jackson with his truck, [Appellant], however, did not tell the officer that he was afraid of Ms. Jackson or that she was trying to injure him in any way. The responding officer also spoke with witnesses on the scene who saw Ms. Jackson fall from [Appellant's] truck. The witnesses estimated that [Appellant] had been traveling "approximately 10 miles per hour", and they both confirmed that [Appellant] kept driving even while Ms. Jackson was "hanging from [the] window of the car."

The immediate aftermath of this incident left Ms. Jackson with head pain and her arms feeling like they were "on fire." Ms. Jackson sought medical treatment two days later. She sustained physical injuries which included contusions, bruising, and a hand

injury which required her to seek occupational therapy and wear a brace. Ms. Jackson also suffered emotional trauma, which manifested itself in nightmares, and she suffered some economic loss due to her hand injury. Photos submitted at trial displayed bruising on Ms. Jackson's forearm, where she had indicated that [Appellant] had repeatedly punched her with a closed fist.

Trial Court Opinion, 5/18/22, at 3-7 (citations to notes of testimony omitted).

The Commonwealth charged Appellant with simple assault and REAP. The trial court held a non-jury trial on August 6, 2021 and convicted Appellant of both charges. On November 4, 2021, the trial court sentenced Appellant to an aggregate 1 – 2 years in prison, followed by 2 years of probation. Appellant filed a post-sentence motion, which the trial court denied. Due to an ensuing breakdown in the court process, Appellant filed a petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his direct appeal rights. The trial court granted relief, and this timely appeal followed.[2]

Appellant presents a single issue for our review:

Was the evidence presented at trial insufficient to sustain [Appellant's] convictions for simple assault and [REAP] because it was insufficient to disprove defense of property under Section 507 of the Crimes Code?

Appellant's Brief at 6 (unnumbered).

Appellant challenges the sufficiency of the evidence. When reviewing a sufficiency challenge, we determine "whether the evidence at trial, and all

---

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

- 4 -

reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." ***Commonwealth v. May***, 887 A.2d 750, 753 (Pa. 2005). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

Appellant maintains he was wrongly convicted of simple assault and REAP because he was justified in using force to defend his movable property. ***See*** 18 Pa.C.S.A. § 507(a)(1) and (f); Appellant's Brief at 14-20 (unnumbered). He contends "under Pennsylvania law a person is legally privileged to use force to defend against trespass against his movable property or to protect his free movement to a place he is lawfully permitted to move." ***Id.*** at 14 (unnumbered).

An individual commits simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

The Pennsylvania Crimes Code states: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which

places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "[REAP] requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." *Commonwealth v. Shaw*, 203 A.3d 281, 284 (Pa. Super. 2019).

Section 507 of the Crimes Code provides that a person may use force to protect or defend property when he believes that force is "immediately necessary" to "prevent ... a trespass against or the unlawful carrying away of tangible movable property, if such ... movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts." 18 Pa.C.S.A. § 507(a)(1). A person may also use force to "pass a person whom the actor believes to be intentionally or knowingly and unjustifiably obstructing the actor from going to a place to which he may lawfully go[.]" 18 Pa.C.S.A. § 507(f).

Here, the trial court

believes that this argument should be deemed waived since [Appellant's] trial counsel never meaningfully argued self-defense/defense of property at trial. The closest thing even resembling commentary regarding self-defense came during closing arguments, when defense counsel stated the following:

[Appellant] was trying to leave, … [but Ms. Jackson] threw her purse into the car and then dove into the car to get her purse. **She was the aggressor in this situation**, Your Honor. ... He did not take off and drive away fast.

> He drove very slowly hoping that she would leave. **Who knows what she would have done to him if she would have gotten in the car.**
>
> [N.T., 8/6/21, at 74] (emphasis added). Aside from these two remarks, counsel did not elaborate any further on a self-defense justification and never uttered the words "defense of property."[3] The failure to meaningfully raise and/or develop any argument as to self-defense/defense of property should render this argument waived on appeal.

Trial Court Opinion, 5/18/22, at 13 (footnote added).

It is axiomatic that issues not first presented to the trial court are waived on appeal. Pa.R.A.P. 302(a). "The appellate rules direct that an issue must be raised in the trial court in order to provide that court with the opportunity to consider the issue, rule upon it correctly, and obviate the need for appeal." *Gustine Uniontown Assocs., Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 835 (Pa. Super. 2006). **Similarly, a litigant may not present a new or different legal theory in support of relief on appeal.** *Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017). Thus, all legal theories or arguments must first be presented to the trial court, which can then correct error in the first instance before an appeal becomes necessary.

The trial court's determination that Appellant never raised the affirmative defense of use of force in defense of property before this appeal is

---

[3] The trial court does not point to, and we have not found any place in the notes of testimony where Appellant argued Ms. Jackson wrongly obstructed him within the meaning of 18 Pa.C.S.A. § 507(f).

supported by the record. The two sentences quoted by the trial court, when read in context, do not demonstrate that Appellant raised this affirmative defense. Rather, the quoted sentences were part of trial counsel's argument that Ms. Jackson's version of the events was not credible. **See** N.T., 8/6/21, at 72-76 (trial counsel arguing Ms. Jackson was not credible because: (1) she gave multiple versions of the events; (2) she did not tell police that Appellant punched or kicked her; (3) the responding police officer testified the bruises on Ms. Jackson's arm were old; (4) the Commonwealth did not call eyewitnesses to the event at trial because they would have contradicted Ms. Jackson's version of the events; (5) Ms. Jackson has a history of mental health problems; (6) the medical records did not corroborate Ms. Jackson's testimony about her injuries; and (7) Ms. Jackson has a history of drug and alcohol use.).

Because Appellant never raised this affirmative defense at trial, instead raising it for the first time in his Rule 1925(b) statement, this challenge to the sufficiency of the evidence is waived. **Cline**, 177 A.3d at 927. **See also Commonwealth v. Goolson**, 189 A.3d 994, 1000 (Pa. Super. 2018) (appellant cannot raise new legal theory on appeal); **Commonwealth v. Coleman**, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived); **Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) (courts may not act as counsel for a party).

Even if we were to address Appellant's claim, it would not merit relief. As the trial court aptly stated:

[T]his issue is wholly without merit as there was absolutely no evidence of record to support a finding of self-defense or defense of property. Although he did not testify at trial, [Appellant] did speak with the responding officer at the scene, and he never intimated, let alone articulated, that he was in fear for his own safety, or property, at any point during the incident. [N.T., 8/6/21, at 60-61]. His stated goal was simply to get away from Ms. Jackson, and he tried to accomplish that goal by putting her in substantial danger and by causing her physical harm. [*Id.*]. The Commonwealth proved beyond a reasonable doubt that [Appellant] was guilty of Simple Assault and [REAP], and there was no evidence of record that was introduced by [Appellant] that fairly raised the issue of self-defense/defense of property. Accordingly, this contention respectfully should be rejected on appeal.

Trial Court Opinion, 5/18/22, at 13-14. We agree.

We have thoroughly reviewed the record, which demonstrates Appellant did not testify at trial and did not call any witnesses. The responding officer, Neyib Velazquez, testified Appellant stated he wanted to get away from Ms. Jackson. N.T., 8/6/21, at 59. Officer Velazquez testified Appellant never claimed to be afraid of Ms. Jackson or that she was trying to injure him. *Id.* at 60. Our review discloses no testimony that Ms. Jackson attempted to damage Appellant's truck. *See id.* at 12-71. When trial counsel asked Officer Velazquez about Appellant's demeanor, he agreed with counsel's description of Appellant as calm and well-spoken. *Id.* at 66. Thus, the record is devoid of any testimony demonstrating Appellant used force to protect his property.

The evidence is sufficient to sustain Appellant's convictions for simple assault and REAP. *See Commonwealth v. Rahman*, 75 A.3d 497, 502-03 (Pa. Super. 2013) (finding evidence sufficient to sustain simple assault and

REAP convictions where defendant shoved and punched victim several times in stairwell, which could have caused victim to fall, and which resulted in victim's sustaining sprained shoulder and bruised rib). Thus, even if not waived, Appellant's contention the Commonwealth failed to disprove he acted in defense of property merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2023